1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   DIRK JAONG BOUIE,                              No.  2:18-cv-2040 KJM AC P

12                    Plaintiff,

13           v.                                     ORDER

14   OSCAR SMITH, et al.,

15                    Defendants.

16

17       **I.**       **Introduction**

18           Plaintiff Dirk Jaong Bouie is a state prisoner currently incarcerated in the R.J. Donovan

19   Correctional Facility, under the authority of the California Department of Corrections and

20   Rehabilitation (CDCR).  Plaintiff proceeds pro se with a civil rights complaint filed pursuant to

21   42 U.S.C. § 1983, which challenges conditions of his prior confinement at High Desert State

22   Prison (HDSP).  Plaintiff paid the filing fee.

23           This action is referred to the undersigned United States Magistrate Judge pursuant to 28

24   U.S.C. § 636(b)(1)(B) and Local Rule 302(c).  For the reasons that follow, the undersigned:  (1)

25   finds that the complaint states cognizable claims against defendants Smith, Rossi and Harwood,

26   but not against defendant Davis; (2) gives plaintiff the between proceeding on his complaint

27   against defendants Smith, Rossi and Harwood, OR filing an amended complaint in an attempt to

28   add a cognizable claim against defendant Davis.

1

1    II.    **Screening of Plaintiff's Complaint**

2         A.    **Legal Standards for Screening Prisoner Complaints**

3         The court is required to screen complaints brought by prisoners seeking relief against a

4    governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The

5    court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally

6    "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek

7    monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1),(2).

8    A claim is legally frivolous when it lacks an arguable basis either in law or in fact.  Neitzke v.

9    Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th Cir.

10   1984).

11        "A document filed pro se is 'to be liberally construed,' and 'a pro se complaint, however

12   inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by

13   lawyers.'"  Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97,

14   106 (1976) (internal quotation marks omitted)).  See also Fed. R. Civ. P. 8(e) ("Pleadings shall be

15   so construed as to do justice.").

16        B.    **Plaintiff's Allegations**

17        The complaint, ECF No. 1, sets forth the following allegations.  On August 13, 2014,

18   plaintiff became agitated while talking with his assigned counselor in C Yard's Building Four.

19   Defendant Correctional Officer (CO) Smith, who was accompanied by defendant CO Ross, told

20   plaintiff to shut up.  Plaintiff told Smith to do the same.  Smith confirmed with plaintiff's

21   counselor that her interaction with plaintiff was completed, then told plaintiff to leave.  Plaintiff

22   was housed in Building Three.  He left Building Four, went to the C Yard patio door and told CO

23   Hunter (not a defendant), who was the tower officer, that he needed to see his psychiatrist; Hunter

24   allowed plaintiff onto the patio.  CO Barron (not a defendant) spoke with plaintiff and instructed

25   him to stand in the painted square to wait for mental health services.

26        Two or three minutes later, defendants Smith and Ross walked up to plaintiff.  Smith told

27   plaintiff to go to his cell.  Plaintiff told Smith that he needed to speak with his psychiatrist

28   because he "felt like dying."  ECF No. 1 at 4.  "Smith then said so what and that he did not care."

2

1    Id.  Plaintiff told Smith "do what you have to do, I faced the wall and placed my hands behind my

2    back.  Smith put me in hand cuffs and took hold of my left arm and Rossi took my right arm."  Id.

3    Thinking that defendants "were following policy when an inmate voices suicide," plaintiff

4    complied until defendants walked him past his psychiatrist's office.  Plaintiff then attempted to

5    fall on his knees in an effort to become prone, so that an emergency alarm would be activated and

6    additional staff would respond.  Smith and Rossi put plaintiff up against the wall.  Smith told

7    plaintiff that he would be returned to his cell.  Plaintiff told Smith he felt suicidal and Smith again

8    said he didn't care.  When Smith pulled plaintiff from the wall, plaintiff succeeded in falling to

9    his knees.  Smith and Rossi dragged plaintiff three or four feet from the patio door, "out of view

10   of other inmates," and slammed plaintiff to the ground.  Smith then "jumped on [plaintiff's] head

11   and upper back with his knees and body weight" and ground plaintiff's face into the gravel.  Id. at

12   5.  When plaintiff said he couldn't breathe, Smith leaned close to plaintiff's ear and said, "I don't

13   care if you die."  Id.

14         Plaintiff sustained cuts to his face and wrists and other injuries to his head, jaw, ear, neck

15   and back.  Defendant J. Harwood, the attending nurse, documented plaintiff's injuries but

16   "refused to treat them and/or give [plaintiff] pain medication."  Id. at 5.  Only after being placed

17   in Ad Seg and submitting a request for medical care did plaintiff receive treatment, more than 24

18   hours after sustaining his injuries.  The attending nurse provided plaintiff medication, ointment

19   and dressing, and told him that it was the "responding nurse['s] job . . . to make sure I was treated

20   the day prior."  Id. at 12.

21         Plaintiff was accused of battery on Smith and Rossi, though they had no injuries, and

22   plaintiff was transferred to Ad Seg.  While still housed in Ad Seg in October, plaintiff had an

23   occasion to talk with Smith who allegedly failed to contradict plaintiff's assertions that Smith had

24   lied.  Id. at 6.

25         Claims I through V and VII allege, inter alia, violations of plaintiff's Eighth Amendment

26   rights by defendants Smith, Rossi and Harwood.  Plaintiff's Claim VI alleges violation of due

27   process and retaliation by defendant Davis, who was plaintiff's assigned investigative employee

28   for purposes of his disciplinary hearing.  Id. at 11.  In support of Claim VI, plaintiff alleges that

1  on August 27, 2014, prior to his disciplinary hearing, Davis told plaintiff to prepare questions for

2  witnesses Smith and Rossi.  Davis returned on August 29, 2014; plaintiff told him he wanted to

3  pose the questions directly to defendants at the hearing.  Davis said you can't have both an

4  investigator and witnesses; plaintiff said he didn't want an investigator.  Davis said he would be

5  back with a form for plaintiff's signature to remove Davis as his investigator, but he never

6  returned.  Although plaintiff submitted a Form 22 documenting the problem, Davis proceeded to

7  prepare a "false" report, denying plaintiff's "right against false statements [and] . . . right to due

8  process."  Id.

9      Against all defendants, plaintiff seeks damages based on his physical injuries and resulting

10  emotional distress.

11          **C.**        **Analysis**

12      The allegations of the complaint state a cognizable Eighth Amendment claim against

13  defendant Smith for the use of excessive force.  "In its prohibition of 'cruel and unusual

14  punishments,' the Eighth Amendment places restraints on prison officials, who may not ... use

15  excessive physical force against prisoners."  Farmer v. Brennan, 511 U.S. 825, 832 (1994) (citing

16  Hudson v. McMillian, 503 U.S. 1 (1992)).  "[W]henever prison officials stand accused of using

17  excessive physical force in violation of the [Eighth Amendment], the core judicial inquiry is ...

18  whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously

19  and sadistically to cause harm."  Hudson, 503 U.S. at 6-7 (citing Whitley v. Albers, 475 U.S. 312

20  (1986)).

21      The allegations of the complaint also state a cognizable failure-to-protect claim against

22  defendant Rossi under the Eighth Amendment.  A "failure to protect" claim under the Eighth

23  Amendment requires a showing that "the official [knew] of and disregard[ed] an excessive risk to

24  inmate . . . safety."  Farmer, 511 U.S. at 837.  "Whether a prison official had the requisite

25  knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways,

26  including inference from circumstantial evidence, ... and a factfinder may conclude that a prison

27  official knew of a substantial risk from the very fact that the risk was obvious."  Id. at 842

28  (citations omitted).

1    Plaintiff's allegations also state cognizable claims against both Smith and Rossi for

2 deliberate indifference to plaintiff's serious mental health needs, by interfering with and denying

3 plaintiff mental health treatment, and deliberately engaging in conduct that exacerbated his fears.

4 "In the Ninth Circuit, the test for deliberate indifference consists of two parts.  First, the plaintiff

5 must show a serious medical need by demonstrating that failure to treat a prisoner's condition

6 could result in further significant injury or the unnecessary and wanton infliction of pain.  Second,

7 the plaintiff must show the defendant's response to the need was deliberately indifferent.  This

8 second prong ... is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's

9 pain or possible medical need and (b) harm caused by the indifference." Jett v. Penner, 439 F.3d

10 1091, 1096 (9th Cir. 2006) (internal citations, punctuation and quotation marks omitted).

11    Under the same standards, plaintiff's allegations state a cognizable claim against

12 defendant Harwood for deliberate indifference to plaintiff's serious physical medical needs.

13    However, plaintiff's allegations against defendant Davis, his assigned investigative

14 employee (IE), do not state a cognizable claim.  Under state prison regulations, a

15 prisoner is entitled to an IE under specified circumstances.[1]  The prisoner is entitled to waive the

16

17    [1] Cal. Code Regs. tit. 15, § 3315 provides in pertinent part:

18    (d) An inmate shall be assigned an employee to assist in the
investigation of matters pertaining to a disciplinary action when the
19    chief disciplinary officer or designee determines the necessity based
on the following criteria.

20
    (1) ... (A) An investigative employee, as described in section 3318(a),
21    shall be assigned when the staff designated to classify the serious rule
violation determines that:
22
    1. The complexity of the issues require further investigation.
23
    2. The housing status makes it unlikely the charged inmate can
24    collect and present the evidence necessary for an adequate
presentation of a defense.
25
    3. A determination has been made that additional information is
26    necessary for a fair hearing.

27    4. The behavior may present a nexus with a Security Threat Group.

28 Cal. Code Regs. tit. 15, § 3315(d)(1)(A).

5

assistance of an IE,[2] or request the assignment of another IE,[3] and may request the attendance of both adverse and friendly witnesses at the disciplinary hearing.[4]

////

---

[2] "The inmate may choose to waive the assignment of an investigative employee . . . . The inmate's request to waive assistance of an investigative employee . . . will be indicated in the 'waived by inmate' checkbox on the RVR . . . and signed and dated by the inmate. The classifying official may choose to un-assign the investigative employee based on the inmate's signed waiver on the RVR." Cal. Code Regs. tit. 15, § 3315(d)(1)(B).

[3] "The inmate may not select the investigative employee, but may object to the one assigned and provide, in writing to the classifying official, the reasons for the objection. The classifying official shall evaluate the inmate's objection(s) and, if determined to be reasonable, assign an alternate investigative employee to complete the investigation. If the classifying official determines that the inmate's objections are not reasonable, the original investigative employee shall complete the investigation. . . . " Cal. Code Regs. tit. 15, § 3315(d)(1)(D).

[4] Cal. Code Regs. tit. 15, § 3315 provides in pertinent part:

> (e) Witnesses. An inmate may request that friendly and adverse witnesses attend the hearing.
>
> (1) Requested witnesses shall be called unless the official conducting the hearing denies the request for one of the following reasons:
>
> > (A) The appearance would endanger the witness.
> >
> > (B) The official determines that the witness has no relevant or additional information.
> >
> > (C) The witness is unavailable.
>
> (2) If an inmate's request for a witness is denied, the reasons shall be documented on the RVR.
>
> (3) Whether or not the inmate requests a witness, witnesses may be called if the official conducting the hearing determines the witnesses may have information necessary to the finding of fact.
>
> (4) The reporting employee shall attend the disciplinary hearing or be available for questioning via speakerphone if requested by the inmate.
>
> (5) Under the direction of the official conducting the disciplinary hearing, the inmate has the right to ask questions of all witnesses called. The SHO will screen all questions to ensure they are relevant to the violation charged.
>
> (6) Nothing in this section shall preclude making a witness available by speaker phone for a disciplinary hearing.

Cal. Code Regs. tit. 15, § 3315(e).

1    However, under federal law, only the following minimum procedural requirements must

2    be met in prison disciplinary proceedings:  (1) written notice of the charges; (2) at least 24 hours

3    between the time the prisoner receives written notice and the time of the hearing, so that the

4    prisoner may prepare his defense; (3) a written statement by the fact finders of the evidence they

5    rely on and reasons for taking disciplinary action; (4) the right of the prisoner to call witnesses in

6    his defense, when permitting him to do so would not be unduly hazardous to institutional safety

7    or correctional goals; and (5) legal assistance to the prisoner where the prisoner is illiterate or the

8    issues presented are legally complex.  Wolff v. McDonnell, 418 U.S. 539, 563-71 (1974).

9    In the instant case, plaintiff alleges a denial of due process on the ground that he was

10   unable to call and question adverse witnesses Smith and Rossi, who apparently were also the

11   reporting employees.  Plaintiff informed Davis that he wanted to question Smith and Rossi at the

12   disciplinary hearing and declined to provide Davis with his proposed questions ahead of time.

13   Davis reportedly told plaintiff that he couldn't have "both an investigator and witnesses," so

14   plaintiff said he didn't want an investigator.  Davis said he would return to obtain plaintiff's

15   signature on the appropriate form to remove Davis as his IE, but Davis did not return, instead

16   filing a "false" report.  These allegations are insufficient to fully assess plaintiff's due process

17   claim.  The complaint does not identify how Davis' investigative report was "false," nor what

18   took place at the hearing.  Although CDCR regulations require that reporting employees attend

19   the hearing and answer questions upon the inmate's request, Cal. Code Regs. tit. 15, § 3315(e)(4),

20   federal law requires only that the inmate be permitted to call witnesses only in his *defense*, Wolff,

21   418 U.S. at 566.  Defendants Smith and Rossi were not defense witnesses, and plaintiff does not

22   assert that he requested other witnesses.  As framed, plaintiff's allegations do not state a due

23   process claim.

24   Plaintiff also asserts a First Amendment retaliation claim against Davis based on his

25   "false" report.  "Within the prison context, a viable claim of First Amendment retaliation entails

26   five basic elements:  (1) An assertion that a state actor took some adverse action against an inmate

27   (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's

28   exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate

1   correctional goal." <u>Rhodes v. Robinson</u>, 408 F.3d 559, 567-68 (9th Cir. 2005) (fn. and citations

2   omitted).  "[A] plaintiff who fails to allege a chilling effect may still state a claim if he alleges he

3   suffered some other harm" as a retaliatory adverse action.  <u>Brodheim v. Cry</u>, 584 F.3d 1262, 1269

4   (9th Cir. 2009) (citing <u>Rhodes</u>, 408 F.3d at 568, n.11).  Plaintiff's allegations do not identify what

5   constitutionally protected conduct he engaged in that allegedly motivated Davis' retaliation.

6   These allegations are insufficient to state a retaliation claim.

7          For the reasons set forth above, the court finds that the complaint states cognizable claims

8   against defendants Smith, Rossi and Harwood but not against defendant Davis.  Therefore

9   petitioner may either (1) proceed on his original complaint against defendants Smith, Rossi and

10   Harwood, and agree to voluntarily dismiss defendant Davis, OR (2) plaintiff may submit a

11   proposed amended complaint that repeats his allegations against defendants Smith, Rossi and

12   Harwood, and attempts to state a cognizable claim against Davis.  Plaintiff should consider the

13   legal standards set forth above in determining whether to again attempt to state a claim against

14   defendant Davis.

15          **III.     <u>Optional Leave to Amend</u>**

16          As explained above, the court finds that the complaint states cognizable claims against

17   defendants Smith, Rossi and Harwood but not against defendant Davis.  Plaintiff may either (1)

18   proceed forthwith to serve process of the original complaint on defendants Smith, Rossi and

19   Harwood, voluntarily dismissing defendant Davis, OR (2) he may delay serving any defendant

20   and amend the complaint in an attempt to add a cognizable claim against Davis.  Plaintiff must

21   inform the court of his decision by completing and filing the attached "Notice of Election" within

22   thirty (30) days after service of this order.

23          If plaintiff chooses to file a First Amended Complaint (FAC), the complaint must allege in

24   specific terms how each named defendant violated plaintiff's specific constitutional rights.  <u>Rizzo</u>

25   <u>v. Goode</u>, 423 U.S. 362, 371 (1976).  There can be no liability under Section 1983 unless there is

26   some affirmative link or connection between a defendant's actions and the claimed deprivation.

27   <u>Id</u>.; <u>May v. Enomoto</u>, 633 F.2d 164, 167 (9th Cir. 1980).  Vague and conclusory allegations of

28   ////

8

official participation in civil rights violations are not sufficient.  <u>Ivey v. Board of Regents</u>, 673

F.2d 266, 268 (9th Cir. 1982).

Local Rule 220 requires that an amended complaint be complete in itself without

reference to any prior pleading.  <u>See</u> <u>also</u> <u>Loux v. Rhay</u>, 375 F.2d 55, 57 (9th Cir. 1967) (an

amended complaint supersedes the prior complaint).  Therefore, in a FAC, each claim and the

involvement of each defendant must be sufficiently alleged.

## IV.    <u>Later Service of Process on Defendants</u>

Because plaintiff paid the filing fee, he will be responsible for serving process on

defendants.  If plaintiff decides to proceed on his original complaint, he will be required to serve

process on defendants Smith, Rossi and Harwood.  After filing his Notice of Election, the court

will instruct plaintiff how to seek waivers of service from these defendants rather than attempt

personal service.

Should plaintiff wish to apply for in forma pauperis status – which, if granted, would

entitle plaintiff to the immediate assistance of the court and the United States Marshall to effect

service – he may do so by completing and filing the in forma pauperis application included with

this order, together with a copy of his prison trust account statement for the six-month period

preceding the filing of this order.  The completed application must be filed with the Notice of

Election.

## IV.    <u>Plain Language Summary for Pro Se Litigant</u>

The court has screened your complaint and found that it states the following Eighth

Amendment claims:  (1) excessive force against defendant Smith; (2) failure-to-protect against

defendant Ross; (3) deliberate indifference to your serious mental health needs against defendants

Smith and Rossi; and (4) deliberate indifference to your serious physical medical needs against

defendant Harwood.

The court has found that your allegations against defendant Davis do not show that your

rights were violated.  You have not identified anything Davis did that denied you the due process

protections guaranteed by the U.S. Supreme Court in <u>Wolff v. McDonnell</u>, 418 U.S. 539 (1974).

Your retaliation claim fails because you have not shown that (1) you were doing something

constitutionally protected, and (2) Davis treated you badly because you were exercising your constitutional rights.

You are being given the choice between (1) proceeding on your original complaint against defendants Smith, Rossi and Harwood, and voluntarily dismissing defendant Davis, OR (2) filing an amended complaint that tries to fix your claim against Davis while repeating your allegations and claims against defendants Smith, Rossi and Harwood.  If you file an amended complaint, the court will screen it under 28 U.S.C. § 1915A.  You do not have to file an amended complaint. You must return the attached Notice of Election, telling the court what you want to do.

Because you paid the filing fee in this case, you are responsible for serving process on the defendants.  Once it is clear what complaint needs to be served, the court will tell you how to request waivers of service from the defendants instead of trying to personally serve them.

If you wish to apply for in forma pauperis status, you must complete and submit the enclosed application to proceed in forma pauperis together with your Notice of Election.  If you qualify for in forma pauperis status, the court and the United States Marshall will assist with serving process on the defendants.  The court would initially direct CDCR to attempt electronic service of process on defendants.

**V.    <u>Conclusion</u>**

Accordingly, IT IS HEREBY ORDERED that:

1.  In accordance with 28 U.S.C. § 1915A, the Court has screened plaintiff's complaint and finds that it states cognizable claims against defendants Smith, Rossi and Harwood, but not against defendant Davis.

2.  Plaintiff may either (1) proceed immediately on his claims against defendants Smith, Rossi and Harwood, voluntarily dismissing defendant Davis; OR (2) file a First Amended Complaint (FAC) that attempts to add a cognizable claim against Davis.

3.  Within thirty (30) days after service of this order, plaintiff shall complete and return the attached Notice of Election form notifying the court whether he wants to proceed on his original complaint, as screened by the court, <u>OR</u> proceed on a FAC.

4.  If plaintiff chooses to proceed on a FAC, it must be submitted with his Notice of Election form, comply with the requirements set forth herein, bear the docket number assigned this case, and be labeled "First Amended Complaint."

5.  Should plaintiff fail to timely file the Notice of Election, the undersigned will recommend that this action be dismissed without prejudice.

6.  The Clerk of Court is directed to send plaintiff the following documents:  (a) a copy of this order; (b) a blank form complaint used by prisoners in this district to pursue a civil rights action under 42 U.S.C. § 1983; and (c) an application to proceed in forma pauperis used by prisoners in this district.

IT IS SO ORDERED.

DATED: July 16, 2020

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

11

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DIRK JAONG BOUIE,

Plaintiff,

v.

OSCAR SMITH, et al.,

Defendants.

No.  2:18-cv-2040 KJM AC P

**NOTICE OF ELECTION**

In compliance with the court's order filed _____, plaintiff elects to:

_____    **Proceed on his original complaint against defendants Smith, Rossi and Harwood, AND voluntarily dismiss defendant Davis.**

**OR**

_____    **Proceed on a First Amended Complaint (FAC), submitted herewith.**

_____    **In addition, plaintiff DOES / DOES NOT (circle one) seek in forma pauperis status; if so, plaintiff's application and supporting documents are submitted herewith.**

_____          _____
Date                                                                  Plaintiff

1