1

2

3

4

5

6

7

8                       UNITED STATES DISTRICT COURT

9                 FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    DIRK JAONG BOUIE, JR.,                    No.  2:18-cv-2040 KJM AC P

12                   Plaintiff,

13          v.                                  ORDER AND FINDINGS &
                                                RECOMMENDATIONS
14    OSCAR SMITH, et al.,

15                   Defendants.

16

17          Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42

18   U.S.C. § 1983.  Currently before the court is defendants' motion for summary judgment.  ECF

19   No. 41.

20      I.      Procedural History

21          On screening the complaint, the court found that plaintiff had stated claims against

22   defendants Smith, Rossi, and Harwood but did not state any cognizable claims against defendant

23   Davis.  ECF No. 8.  Plaintiff was given the option of proceeding on the complaint as screened or

24   amending the complaint.  Id. at 10.  Plaintiff elected to proceed on the complaint as screened and

25   voluntarily dismissed defendant Davis.  ECF No. 9.

26          Prior to the close of discovery, defendants filed a motion for summary judgment on the

27   ground that plaintiff failed to exhaust his administrative remedies.  ECF No. 41.  Plaintiff opposes

28   the motion.  ECF No. 49.  After defendants filed their reply, plaintiff filed a surreply, which was

                                              1

followed almost two months later by a motion for leave to file a sur-reply.  ECF Nos. 54, 62.

Defendants have moved to strike the surreply and oppose the motion for leave; they have also

moved to withdraw their arguments that plaintiff's declaration was not signed under oath.  ECF

Nos. 56, 57, 63.  Merits-based discovery is presently stayed pending resolution of the motion for

summary judgment.  ECF No. 43.

II.     Plaintiff's Allegations

Plaintiff alleges that on August 13, 2014, he was approached by defendants Smith and

Rossi while waiting to speak with his psychiatrist because he was feeling suicidal.  ECF No. 1 at

3-4.  Smith told plaintiff to return to his cell, to which plaintiff responded that he "felt like dying."

Id. at 4.  Smith stated that he did not care and proceeded to handcuff plaintiff.  Id.  Smith and

Rossi then began escorting plaintiff away from his psychiatrist's office, at which point plaintiff

attempted to transition to the prone position in order to have other staff respond.  Id.  Smith and

Rossi placed plaintiff against a wall and began escorting him to the yard and Smith stated that

plaintiff was going to his cell.  Id.  Plaintiff repeated that he was feeling suicidal, with Smith

responding that he did not care.  Id. at 4-5.  Plaintiff fell to his knees and defendants proceeded to

drag him out of view where Smith jumped on plaintiff's head and upper back with his knees and

used his knee to grind plaintiff's face into the gravel.  Id. at 5.  When plaintiff stated that he could

not breath, Smith responded that he did not care if plaintiff died.  Id.  Rossi did nothing to

intervene.  Id. at 8.  Defendant Harwood documented plaintiff's injuries but refused to provide

him with any treatment or pain medication, which he finally received the following day when he

was seen by another nurse in response to a request for medical care.  Id. at 12.

III.    Motion for Summary Judgment

A.      Defendants' Arguments

Defendants argue that plaintiff failed to properly exhaust his administrative remedies

because his appeal concerning excessive force, failure to intervene, and failure to provide medical

care was untimely and plaintiff did not submit any appeals concerning the alleged interference

with or failure to provide mental health care.  ECF No. 41.  In their reply, defendants also argued

that plaintiff's declaration should be disregarded because it was not signed under penalty of

2

1  perjury.  ECF No. 50 at 5.  They have since moved to withdraw that argument as being made in

2  error (ECF No. 57), and the motion will be granted.

3         B.    Plaintiff's Response

4      "Pro se litigants must follow the same rules of procedure that govern other litigants."

5  King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987) (citation omitted), overruled on other grounds,

6  Lacey v. Maricopa County, 693 F.3d 896, 928 (9th Cir. 2012) (en banc).  However, it is well-

7  established that district courts are to "construe liberally motion papers and pleadings filed by *pro*

8  *se* inmates and should avoid applying summary judgment rules strictly."  Thomas v. Ponder, 611

9  F.3d 1144, 1150 (9th Cir. 2010).  The unrepresented prisoner's choice to proceed without counsel

10  "is less than voluntary" and they are subject to "the handicaps . . . detention necessarily imposes

11  upon a litigant," such as "limited access to legal materials" as well as "sources of proof."

12  Jacobsen v. Filler, 790 F.2d 1362, 1364 n.4 (9th Cir. 1986) (alteration in original) (citations and

13  internal quotation marks omitted).  Inmate litigants, therefore, should not be held to a standard of

14  "strict literalness" with respect to the requirements of the summary judgment rule.  Id. (citation

15  omitted).

16      Accordingly, though plaintiff has largely complied with the rules of procedure, the court

17  will consider the record before it in its entirety.  However, only those assertions in the opposition

18  which have evidentiary support in the record will be considered.

19      Plaintiff opposes defendants' motion and argues that the appeals system was unavailable

20  to him because staff obstructed his attempts to exhaust by destroying his appeals and that he

21  nevertheless managed to have his staff complaint adjudicated at the final level of appeal.  ECF

22  No. 49 at 1-8.

23      With respect to plaintiff's surreply and subsequent request for leave to file a surreply,

24  Local Rules 230 sets out the procedures for civil motions and contemplates a motion, a response,

25  and a reply.  There is no provision for a surreply.  Moreover, the court has reviewed plaintiff's

26  surreply and motion and finds that they merely repeat arguments that plaintiff has already made.

27  Defendants' motion to strike the surreply will therefore be granted and the motion for leave to file

28  a surreply will be denied.

3

1    IV.    Legal Standards for Summary Judgment

2         Summary judgment is appropriate when the moving party "shows that there is no genuine

3    dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

4    Civ. P. 56(a).  Under summary judgment practice, "[t]he moving party initially bears the burden

5    of proving the absence of a genuine issue of material fact." In re Oracle Corp. Sec. Litig., 627

6    F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  The

7    moving party may accomplish this by "citing to particular parts of materials in the record,

8    including depositions, documents, electronically stored information, affidavits or declarations,

9    stipulations (including those made for purposes of the motion only), admissions, interrogatory

10   answers, or other materials" or by showing that such materials "do not establish the absence or

11   presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to

12   support the fact." Fed. R. Civ. P. 56(c)(1).

13        "Where the non-moving party bears the burden of proof at trial, the moving party need

14   only prove that there is an absence of evidence to support the non-moving party's case." Oracle

15   Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B).

16   Indeed, summary judgment should be entered, "after adequate time for discovery and upon

17   motion, against a party who fails to make a showing sufficient to establish the existence of an

18   element essential to that party's case, and on which that party will bear the burden of proof at

19   trial." Celotex, 477 U.S. at 322.  "[A] complete failure of proof concerning an essential element

20   of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.  In such

21   a circumstance, summary judgment should "be granted so long as whatever is before the district

22   court demonstrates that the standard for the entry of summary judgment, as set forth in Rule

23   56(c), is satisfied." Id.

24        If the moving party meets its initial responsibility, the burden then shifts to the opposing

25   party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec.

26   Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).  In attempting to establish the

27   existence of this factual dispute, the opposing party may not rely upon the allegations or denials

28   of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or

4

admissible discovery material, in support of its contention that the dispute exists.  See Fed. R. Civ. P. 56(c).  The opposing party must demonstrate that the fact in contention is material, i.e., a fact "that might affect the outcome of the suit under the governing law," and that the dispute is genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968).  Thus, the "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial."  Matsushita, 475 U.S. at 587 (citation and internal quotation marks omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact, [the court] draw[s] all inferences supported by the evidence in favor of the non-moving party."  Walls v. Cent. Contra Costa Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (citation omitted).  It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita, 475 U.S. at 586 (citations omitted).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  Id. at 587 (quoting First Nat'l Bank, 391 U.S. at 289).

Defendants simultaneously served plaintiff with notice of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure along with their motion for summary judgment.  ECF No. 41-5; see Klingele v. Eikenberry, 849 F.2d 409, 411 (9th Cir. 1988) (pro se prisoners must be provided with notice of the requirements for summary judgment); Rand v. Rowland, 154 F.3d 952, 960 (9th Cir. 1998) (en banc) (movant may provide notice).

1   V.      Legal Standard for Exhaustion

2          Because plaintiff is a prisoner suing over the conditions of his confinement, his claims are

3   subject to the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a).  Under the PLRA,

4   "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or

5   any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until

6   such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a); Porter v.

7   Nussle, 534 U.S. 516, 520 (2002) ("§ 1997e(a)'s exhaustion requirement applies to all prisoners

8   seeking redress for prison circumstances or occurrences").  "[T]hat language is 'mandatory': An

9   inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent

10  exhaustion of available administrative remedies."  Ross v. Blake, 578 U.S. 632, 638 (2016)

11  (quoting Woodford v. Ngo, 548 U.S. 81, 85 (2006)).

12         Failure to exhaust is "an affirmative defense the defendant must plead and prove."  Jones

13  v. Bock, 549 U.S. 199, 204, 216 (2007).  "[T]he defendant's burden is to prove that there was an

14  available administrative remedy, and that the prisoner did not exhaust that available remedy."

15  Albino v. Baca, 747 F.3d 1162, 1172 (9th Cir. 2014) (en banc) (citing Hilao v. Estate of Marcos,

16  103 F.3d 767, 778 n.5 (9th Cir. 1996)).  "[T]here can be no 'absence of exhaustion' unless *some*

17  relief remains 'available.'"  Brown v. Valoff, 422 F.3d 926, 936 (9th Cir. 2005) (emphasis in

18  original).  Therefore, the defendant must produce evidence showing that a remedy is available "as

19  a practical matter," that is, "it must be capable of use; at hand."  Albino, 747 F.3d at 1171

20  (citation and internal quotations marks omitted).  "[A]side from [the unavailability] exception, the

21  PLRA's text suggests no limits on an inmate's obligation to exhaust—irrespective of any 'special

22  circumstances.'"  Ross, 578 U.S. at 639.  "[M]andatory exhaustion statutes like the PLRA

23  establish mandatory exhaustion regimes, foreclosing judicial discretion."  Id. (citation omitted).

24         For exhaustion to be "proper," a prisoner must comply with the prison's procedural rules,

25  including deadlines, as a precondition to bringing suit in federal court.  Woodford, 548 U.S. at 90

26  ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural

27  rules.").  "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of

28  proper exhaustion."  Jones, 549 U.S. at 218; see also Marella v. Terhune, 568 F.3d 1024, 1027

1  (9th Cir. 2009) ("The California prison system's requirements 'define the boundaries of proper

2  exhaustion'" (quoting <u>Jones</u>, 549 U.S. at 218)).

3        As long as some potential remedy remained available through the administrative appeals

4  process, even if it was not the remedy he sought, plaintiff was required to exhaust his remedies.

5  <u>Booth v. Churner</u>, 532 U.S. 731, 741 & n.6 (2001) ("Congress has provided in § 1997e(a) that an

6  inmate must exhaust irrespective of the forms of relief sought and offered through administrative

7  avenues.").  The Supreme Court has identified "three kinds of circumstances in which an

8  administrative remedy, although officially on the books, is not capable of use to obtain relief."

9  <u>Ross</u>, 578 U.S. at 643.  "First, . . . an administrative procedure is unavailable when (despite what

10  regulations or guidance materials may promise) it operates as a simple dead end—with officers

11  unable or consistently unwilling to provide any relief to aggrieved inmates."  <u>Id.</u> (citing <u>Booth</u>,

12  532 U.S. at 736).  "Next, an administrative scheme might be so opaque that it becomes,

13  practically speaking, incapable of use."  <u>Id.</u>  Finally, administrative remedies are unavailable

14  "when prison administrators thwart inmates from taking advantage of a grievance process through

15  machination, misrepresentation, or intimidation."  <u>Id.</u> at 644.

16        When the district court concludes that the prisoner has not exhausted administrative

17  remedies on a claim, "the proper remedy is dismissal of the claim without prejudice."  <u>Wyatt v.

18  Terhune</u>, 315 F.3d 1108, 1120 (9th Cir. 2003) (citation omitted), <u>overruled on other grounds by

19  Albino</u>, 747 F.3d at 1168.

20  VI.    <u>California Regulations Governing Exhaustion of Administrative Remedies</u>

21        Exhaustion requires that the prisoner complete the administrative review process in

22  accordance with all applicable procedural rules.  <u>Woodford</u>, 548 U.S. at 90.  This review process

23  is set forth in the California Code of Regulations.  At the time relevant to this complaint, those

24  regulations allowed prisoners to "appeal any policy, decision, action, condition, or omission by

25  the department or its staff that the inmate or parolee can demonstrate as having a material adverse

26  effect upon his or her health, safety, or welfare."  Cal. Code Regs. tit. 15, § 3084.1(a) (2014).

27  The appeals process was comprised of three levels of review for most types of appeals and was

28  initiated by the inmate's filing of a Form 602 "to describe the specific issue under appeal and the

7

1    relief requested."  Id., §§ 3084.2(a), 3084.7.  An inmate was required to "submit the appeal within

2    30 calendar days of: (1) The occurrence of the event or decision being appealed, or; (2) Upon first

3    having knowledge of the action or decision being appealed, or; (3) Upon receiving an

4    unsatisfactory departmental response to an appeal filed."  Id. § 3084.8(b).  First-level appeals

5    were to be responded to within thirty working days from the date they were received by the

6    appeals coordinator.  Id., § 3084.8(c).  An appeal was exhausted by obtaining a decision at the

7    third level and "a cancellation or rejection decision [did] not exhaust administrative remedies."

8    Id. § 3084.1(b).

9        VII.    Undisputed Material Facts

10       Except as noted, the following facts are undisputed.  Additional facts have been taken

11   from the records of plaintiff's appeals, the authenticity of which are not in dispute.

12       Plaintiff is an inmate in the custody of the California Department of Corrections and

13   Rehabilitation (CDCR).  Defendants' Statement of Undisputed Facts (DSUF) (ECF No. 41-2) ¶ 1;

14   ECF No. 49 at 58.

15       The CDCR and High Desert State Prison (HDSP) had an administrative grievance process

16   for inmates at all times relevant to this lawsuit, which allowed inmates to appeal any departmental

17   decision, action, policy, omission, or condition that had an adverse material effect on their

18   welfare.[1]  DSUF ¶ 5; ECF No. 49 at 58.  The Office of Appeals receives, reviews, and maintains

19   all non-medical inmate grievances at the third and final level of review.  DSUF ¶ 12; ECF No. 49

20   at 59.  During the relevant time period, plaintiff knew about and utilized the administrative

21   grievance process and submitted multiple non-medical appeals that were accepted for review.

22   DSUF ¶¶ 15-16; ECF No. 49 at 59.

23       On September 21, 2014, plaintiff submitted an Inmate/Parolee Request that stated he had

24   submitted a 602 regarding staff misconduct and unnecessary force on August 28, 2014, but had

25   yet to receive a response accepting or rejecting the appeal.  ECF No. 41-3 at 31.  Staff responded

26   on September 22, 2014, and stated that there was no record of a 602 filed on that issue, that

27   _____

28   [1]  Plaintiff agrees that a grievance process existed, but disputes that it was available at all times.
     ECF No. 49 at 58.

                                                    8

1    plaintiff should check with staff, and that the last appeal received was C-14-02121 regarding

2    legal, which was received on July 16, 2014.  Id.  On October 2, 2014, plaintiff responded that the

3    original 602 was stolen and may have been discarded and that he was attaching a copy of the

4    missing 602.  Id.  Staff responded on October 8, 2014, that "RVR for appeal D-14-02961

5    screened out and sent back to you."  Id.

6          On November 4, 2014,[2] plaintiff submitted another Inmate/Parolee Request that stated that

7    he had submitted an appeal on October 23, 2014, regarding a missing 602 on unnecessary force

8    and that on October 31, 2014, he received an appeal assignment notice informing him that the

9    second level would respond.  Id. at 29.  He questioned why the appeal log number for his

10   unnecessary force 602 was the same as the appeal number for his false report 602 since they were

11   two different 602s.  Id.  On November 6, 2014, staff responded that disciplinary appeal D-14-

12   02961 would be answered at the second level and that they did not see an appeal on unnecessary

13   use of force.  Id.

14         On November 18, 2014, plaintiff wrote a letter to the Ombudsman that stated that he was

15   enclosing a fourth copy of a 602 relating to the use of unnecessary force because the original and

16   three other copies had been lost or discarded by staff to exhaust the thirty-day deadline for

17   submission.  Id. at 32.  Plaintiff stated that he was also enclosing the second copy of a 602

18   appealing the loss of the use of force 602, which had also been lost or discarded.  Id.

19         On January 15, 2015,[3] the HDSP Appeals Office received Appeal No. HDSP-O-15-00167

20   from the Office of the Ombudsman.  DSUF ¶ 19; ECF No. 49 at 60-61.  Plaintiff disputes that he

21   did not also submit the appeal directly to the HDSP Appeals Office.  ECF No. 49 at 60.  The

22   appeal was dated August 28, 2014, and stated the following:

23                 On 8-13-14, I was told to report to building C-4 for a legal call.  The
                   legal call, conducted by CCII Ms. Stubbs, was unsuccessful and I
24                 became angry.  C/O Smith stepped into Ms. Stubbs office and told
                   me to shut up and I told him to shut up.  Other things was said back
25                 and forth until C/O O. Smith asked Ms. Stubbs was she done with

26   _____

27   [2]  Plaintiff signed the form October 4, 2014, however, his declaration clarifies that this was a
     typographical error and the correct date is November 4, 2014.  ECF No. 49 at 11.
     [3]  DSUF ¶ 19 states that the appeal was received on January 16, 2015, but the appeal form
28   indicates that it was received on January 15, 2015.  ECF No. 41-3 at 24.

me to which she replied "yes". C/O O. Smith then told me to leave and I did left the building C-4 and went to C-yard patio. After 2 or 3 minutes on the patio, C/O O. Smith and C/O G. Rossi came on the patio and walked up to me. C/O O. Smith told me to report to my cell. I told him I needed to speak with my psyc. He told me so what. I then placed my hands behind my back and C/O Smith placed me in handcuffs. As C/O O. Smith and C/O G. Rossi tried to walk me through the patio door leading to the yard, I attempted to fall to the ground but was immediately placed on the wall by C/O O. Smith and G. Rossi. C/O O. Smith then told me that I'm going to my cell to which I replied "But I'm feeling suisidle." [sic] C/O O. Smith then told me he didn't care and as he was taking me off the wall I fell to my knees in order to prone out. C/O O. Smith then dragged me a few feet and jumped on my lower back and head with each of his knees. One of C/O Smith's knees was on the side of my face and as he moved his knee back and forth, the other side of my face received cuts. I also sustained other injuries.

ECF No. 43-1 at 24, 26. Although the appeal was accepted at the first and second levels, it was

cancelled at the third level of appeal as untimely. DSUF ¶¶ 19-20; ECF No. 49 at 60-62.

Plaintiff did not appeal the cancellation. DSUF ¶ 20; ECF No. 49 at 61-62.

On January 15, 2015, the HDSP Appeals Office also received Appeal No. HDSP-O-15-00176, which was dated October 12, 2014, and stated the following:

On 8-28-14, I submitted a CDCR 602 appealing Staff Misc. for Unecessary [sic] force. A response and/or notice of acceptance was not received and on 9-21-14, I submitted a CDCR 22 form (see attached) requesting a response to the 602 in question. I was informed by L. Bolls, section B of the 22 form, that my 602 for unecessary [sic] force was not received and to check with building staff. In section C of the 22 form I documented that the 602 in question was discarded by staff and I also submitted a copy of the missing 602 attached to the 22 form. Section D response from L. Bolls stated that an appeal log# D-14-02961 was screened out and sent back to me. However, that is an entirely different appeal. Further, the missing appeal's copy I submitted with the 22 form also was not returned back to me. This is the second time that this appeal for unecessary [sic] force has been stolen and discarded by staff in retaliation. I am submitting another copy of the missing 602.

ECF No. 49 at 26, 28. Plaintiff's reply to the first-level response indicates that the appeal was

rejected and that plaintiff received it back on January 28, 2015. Id. at 27, 29.

VIII.   Discussion

As an initial matter, the court notes that defendants have provided evidence related to the

exhaustion of non-medical appeals only. See ECF No. 41-3 (declaration of grievance coordinator

responsible for processing non-healthcare related appeals); ECF No. 41 (declaration of associate

10

director of the Office of Appeals which handles non-healthcare grievances).  Plaintiff has alleged

that Harwood, a nurse, refused to provide him with medical treatment after he was assaulted.

ECF No. 1 at 5, 12.  There is no evidence before the court showing that plaintiff failed to exhaust

a medical appeal on this matter or that an appeal related to this issue would have been handled as

a non-healthcare appeal such that the evidence presented establishes plaintiff's failure to exhaust.

Defendants have therefore failed to show that plaintiff failed to exhaust his claims as they relate

to defendant Harwood.

        With respect to plaintiff's claims against defendants Smith and Rossi, there is no dispute

that a grievance process existed during the relevant time period or that plaintiff knew how to

utilize the grievance process and did so on numerous occasions.  The parties also do not dispute

that plaintiff submitted a grievance related to his claim that Smith subjected him to excessive

force and Rossi failed to intervene.[4]  Instead, the parties dispute whether the grievance also

addressed plaintiff's claim that Smith and Rossi were deliberately indifferent to his mental health

needs and whether the grievance was exhausted or plaintiff was excused from exhaustion.

        "A grievance suffices to exhaust a claim if it puts the prison on adequate notice of the

problem for which the prisoner seeks redress."  Sapp v. Kimbrell, 623 F.3d 813, 824 (9th Cir.

2010).  Appeal No. HDSP-O-15-00167 states that plaintiff advised defendants that he was waiting

to speak to his mental health care provider and that he was feeling suicidal and that in response he

was told that defendants did not care and they continued trying to take him back to his cell.  This

is sufficient to put the prison on notice of plaintiff's claim that Smith and Rossi denied or delayed

his access to his mental health care.

        With respect to whether Appeal No. HDSP-O-15-00167 was exhausted, defendants argue

that plaintiff failed to properly exhaust the appeal because it was properly cancelled and plaintiff

did not appeal the cancellation.  ECF No. 41-1 at 16.  They further argue that plaintiff was not

excused from exhaustion because he was able to submit multiple appeals, which were accepted;

---

[4]  Defendants' evidence includes a number of grievances that plaintiff pursued.  ECF No. 41-3;
ECF No. 41-4.  However, the parties are in agreement that of the appeals that have any relation to
the issues in this case, only Appeal No. HDSP-O-15-00167 covers the allegations of excessive
force.  DSUF ¶¶ 19, 21, 23, 26; ECF No. 49 at 60-64.

1    that he knew how to utilize the appeals process, including how to appeal cancelled appeals; and

2    that he could have appealed the cancellation of Appeal No. HDSP-O-15-00167 but chose not to

3    do so. Id. at 19-20. However, defendants fail to address plaintiff's claim that he attempted to

4    submit Appeal No. HDSP-O-15-00167 on multiple occasions, including one within the thirty-day

5    timeframe, but that each time it was lost or destroyed by staff.

6            The fact that plaintiff was able to successfully file other grievances does not, by itself,

7    demonstrate that administrative remedies were available to plaintiff with respect to the claims at

8    issue in this case. See Williams v. Paramo, 775 F.3d 1182, 1192 (9th Cir. 2015) (the argument

9    that plaintiff successfully filed other appeals "is a virtual non-sequitur because it does nothing to

10   rebut [the prisoner's] evidence that administrative remedies were not available to her at the time

11   she tried to file the relevant grievance and appeal in this case."). Plaintiff has produced a sworn

12   declaration stating that he attempted to submit the Appeal No. HDSP-O-15-00167 on August 28,

13   2014 (original appeal); September 21, 2014 (attached to a request regarding whether the appeal

14   had been accepted); October 2, 2014 (in reply to response that there was no use of force appeal in

15   the log); and October 23, 2014 (attached to an appeal about Appeal No. HDSP-O-15-00167 going

16   missing) (ECF No. 49 at 9-10), and it is undisputed that the appeal was ultimately received from

17   the Office of the Ombudsman (DSUF ¶ 19; ECF No. 49 at 60-61). He has also produced copies

18   of his attempts to follow up on the appeal and to clarify that the appeal he was submitting was not

19   the same as his disciplinary grievance, as well as his appeal of the missing grievance, which he

20   claims also went missing. ECF No. 49 at 16-17, 26-29. This evidence is sufficient to

21   demonstrate that the grievance process was unavailable to plaintiff. See Williams, 775 F.3d at

22   1192 ("The evidence submitted by Defendants generally outlines the procedure for filing a formal

23   complaint, but it does not rebut Williams's [sworn statements] that administrative remedies were

24   not available to her because her filings were rejected by prison officials.").

25           While defendants essentially argue that because plaintiff's grievance was accepted from

26   the Office of the Ombudsman the appeals process was available, this ignores the fact that in order

27   to have his grievance accepted in the first place, plaintiff had to go outside the grievance process.

28   Once HDSP prison officials destroyed plaintiff's grievance or otherwise thwarted his attempts to

                                                    12

pursue the grievance, the grievance process became unavailable to him and he was not required to find alternative ways in which to get his grievance processed.  That plaintiff attempted to do so does not change the fact that the grievance process was unavailable to him with respect to this particular grievance, especially in light of the fact that his grievance was ultimately cancelled as untimely.

IX.    Conclusion

Defendants are not entitled to summary judgment because they have not shown that plaintiff failed to exhaust his administrative remedies as they relate to defendant Harwood and plaintiff has shown that administrative remedies were unavailable to him as they relate to defendants Smith and Rossi.

X.    Plain Language Summary of this Order for a Pro Se Litigant

It is being recommended that defendants' motion for summary judgment be denied.

Accordingly, IT IS HEREBY ORDERED that:

1.  Defendants' motion to strike (ECF No. 56) is GRANTED.  The Clerk of the Court is directed to strike plaintiff's surreply (ECF No. 54) from the record.

2.  Defendants' motion to withdraw arguments (ECF No. 57) is GRANTED.

3.  Plaintiff's motion to file a surreply (ECF No. 62) is DENIED.

IT IS FURTHER RECOMMENDED that defendants' motion for summary judgment (ECF No. 41) be DENIED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be served and filed within fourteen days after service of the objections.  The

////

////

////

13

parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: August 23, 2022

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

14