1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    DIRK JA'ONG BOUIE, JR.,                    No.  2:18-cv-2040 KJM AC P

12                   Plaintiff,

13          v.                                   ORDER AND FINDINGS AND
                                                 RECOMMENDATIONS
14    OSCAR SMITH, et al.,

15                   Defendants.

16

17          Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42

18    U.S.C. § 1983.  Currently before the court are plaintiff's motions to compel, to strike, and for

19    copies (ECF Nos. 80, 83, 84) and defendants' motion for summary judgment (ECF No. 88).

20    I.    Procedural History

21          The complaint alleged that defendants Smith, Rossi, Harwood, and Davis violated

22    plaintiff's constitutional rights.  ECF No. 1.  On screening, the court found that plaintiff had

23    stated claims against Smith, Rossi, and Harwood, but had failed to state any cognizable claims

24    against Davis.  ECF No. 8.  Plaintiff was given the option of amending the complaint or

25    proceeding on the complaint as screened.  Id. at 10.  He chose to proceed on the complaint as

26    screened and voluntarily dismissed defendant Davis.  ECF No. 9.

27          Prior to the close of discovery, defendants moved for summary judgment on the ground

28    that plaintiff failed to exhaust his administrative remedies prior to bringing suit.  ECF No. 41.

                                                    1

1   The motion was denied (ECF No. 67) and a new schedule for discovery and merits-based

2   dispositive motions was set (ECF No. 68).  Shortly before the close of discovery, plaintiff sought

3   to re-open the time for serving written discovery requests and to extend the time to file motions to

4   compel.  ECF No. 74.  Plaintiff was granted an extension of time to file a motion to compel, but

5   the request to re-open discovery was denied.  ECF No. 77.  Plaintiff proceeded to file a motion to

6   compel further responses from Smith and Rossi.  ECF No. 80.  He also sought to strike all

7   incident reports and redact medical examinations and requested that defendants be required to

8   provide him with copies of documents that were missing from his property.  ECF Nos. 83, 84.

9   After the close of discovery, defendants moved for summary judgment on the merits (ECF No.

10   88), which plaintiff opposes (ECF No. 90).

11       II.       Plaintiff's Allegations

12           Plaintiff alleges that on August 13, 2014, he was approached by defendants Smith and

13   Rossi while waiting to speak with his psychiatrist because he was feeling suicidal.  ECF No. 1 at

14   3-4.  Smith told plaintiff to return to his cell, to which plaintiff responded that he "felt like dying."

15   Id. at 4.  Smith stated that he did not care and proceeded to handcuff plaintiff.  Id.  Smith and

16   Rossi then began escorting plaintiff away from his psychiatrist's office, at which point plaintiff

17   attempted to transition to the prone position in order to have other staff respond.  Id.  Smith and

18   Rossi placed plaintiff against a wall and began escorting him to the yard and Smith stated that

19   plaintiff was going to his cell.  Id.  Plaintiff repeated that he was feeling suicidal, with Smith

20   responding that he did not care.  Id. at 4-5.  Plaintiff fell to his knees and defendants proceeded to

21   drag him out of view where Smith jumped on plaintiff's head and upper back with his knees and

22   used his knee to grind plaintiff's face into the gravel.  Id. at 5.  When plaintiff stated that he could

23   not breathe, Smith responded that he did not care if plaintiff died.  Id.  Rossi did nothing to

24   intervene.  Id. at 8.  Defendant Harwood documented plaintiff's injuries but refused to provide

25   him with any treatment or pain medication, which he finally received the following day when he

26   was seen by another nurse in response to a request for medical care.  Id. at 12.

27   ////

28   ////

2

1    III.     Motion to Compel

2              A.      Legal Standards for Discovery

3          The scope of discovery under Federal Rule of Civil Procedure 26(b)(1) is broad.

4    Discovery may be obtained as to "any nonprivileged matter that is relevant to any party's claim or

5    defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "Information within

6    this scope of discovery need not be admissible in evidence to be discoverable." Id. The court,

7    however, must limit discovery if it is "unreasonably cumulative or duplicative, or can be obtained

8    from some other source that is more convenient, less burdensome, or less expensive;" or if the

9    party who seeks discovery "has had ample opportunity to obtain the information by discovery;"

10   or if "the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P.

11   26(b)(2)(C). The purpose of discovery is to "make a trial less a game of blind man's buff and

12   more a fair contest with the basic issues and facts disclosed to the fullest practicable extent,"

13   United States v. Procter & Gamble Co., 356 U.S. 677, 682 (1958) (citation omitted), and "to

14   narrow and clarify the basic issues between the parties," Hickman v. Taylor, 329 U.S. 495, 501

15   (1947).

16         Under Federal Rule of Civil Procedure 37, a motion to compel may be made if "a party

17   fails to produce documents or fails to respond that inspection will be permitted . . . as requested

18   under Rule 34." Fed. R. Civ. P. 37(a)(3)(B)(iv). The party seeking to compel discovery has the

19   burden of showing that the discovery sought is relevant or that its denial will cause substantial

20   prejudice. Aros v. Fansler, 548 F. App'x 500, 501 (9th Cir. 2013) (citing Hallett v. Morgan, 296

21   F.3d 732, 751 (9th Cir. 2002)). The opposing party is "required to carry a heavy burden of

22   showing why discovery was denied." Blankenship v. Hearst Corp., 519 F.2d 418, 429 (9th Cir.

23   1975). Under Federal Rule of Civil Procedure 36, a party may move for a determination as to the

24   sufficiency of an answer or objection to an admission. Fed. R. Civ. P. 36(a)(6).

25             B.      Discovery Sought

26         Plaintiff seeks to compel further responses from Rossi and Smith to request for admission

27   11 and requests for production 1, 3, and 5. ECF No. 80. He also requests that defendants

28   ////

1   "disclose all documents he requested in both his request for documents (set one and two) and

2   request for admissions."  Id. at 4.

3              C.      Defendants' Response

4          Defendants oppose the motion and argue that plaintiff has failed to reproduce the requests

5   or responses he seeks to challenge and that their objections were appropriate and their responses

6   sufficient.  ECF No. 82 at 3-13.  They also argue that some of the documents plaintiff seeks to

7   compel were the subject of plaintiff's request to re-open discovery, which was denied.

8              D.      Discussion

9                  The Court does not hold prisoners proceeding pro se to the same
                   standards that it holds attorneys.  However, at a minimum, as the
10                 moving party plaintiff bears the burden of informing the court of
                   which discovery requests are the subject of his motion to compel and,
11                 for each disputed response, why defendant's objection is not
                   justified.
12

13   Waterbury v. Scribner, No. 1:05-cv-0764 OWW DLB PC, 2008 WL 2018432, at *1, 2008 U.S.

14   Dist. LEXIS 53142, at *3 (E.D. Cal. May 8, 2008).  Plaintiff's request that defendants be required

15   to "disclose all documents he requested in both his request for documents (set one and two) and

16   request for admissions" (ECF No. 80 at 4), without further explanation as to which responses

17   were deficient and why, leaves the court unable to determine whether further responses should be

18   compelled.  Accordingly, only the discovery requests specifically challenged by plaintiff will be

19   addressed.[1]

20          Plaintiff asserts that Request for Admission No. 11 asked that defendants admit they

21   "dragged" plaintiff, but their responses incorrectly used the word "charged" instead.  ECF No. 80

22   at 1.  In response, defendants state that after being notified of the typographical error in their

23   responses, they provided corrected, supplemental responses that responded to the request for

24   admission as written.  ECF No. 82 at 4-5.  Defendants also provide copies of the original request

25   and their original and supplemental responses.  Because defendants have provided amended

26   _____

27   [1]  The court notes that while plaintiff asserts that he did not have copies of the requests and
     responses at the time he filed his motion to compel, he also represents that he had received copies
28   prior to filing his reply and his reply does not challenge the sufficiency of any additional, specific
     discovery responses.

responses to the request, the motion to compel as to Request for Admission No. 11 will be denied as moot.

> **Request for Production No. 1:** Any and all grievances, complaints, or other documents received by any of the defendants at High Desert State Prison (HDSP) concerning the mistreatment of inmates by defendants Smith, Rossi, or Harwood, and any memoranda, investigative files, or other documents created in response to such complaints, since each of the defendants start of employment.
>
> **Response to Request for Production No. 1:** Objection.  This request is overbroad as to time, is unduly burdensome, and is not proportional to the needs of this case under Federal Rule of Civil Procedure 26(b)(1).  This request also seeks impermissible character evidence.  (Fed. Rule of Evid. 404.)  This request seeks information that is deemed confidential under Cal. Code Regs. tit. 15, § 3321, the disclosure of which could: (1) endanger the safety of other inmates and staff of the CDCR, or (2) jeopardize the security of the institution. Additionally, the production of confidential information is improper on the grounds that an inmate shall not have access to information designated confidential.  Cal. Code Regs. tit. 15, § 3370(d).  Personnel-related files are subject to the qualified privilege of official information and a federal common law privilege. *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1033-34 (9th Cir. 1991). Personnel files, including staff complaints contained therein, are also protected by the privacy rights of staff, including federal common law and applicable California statutes including Penal Code sections 832.7, 832.8, Government Code section 6254 and Civil Code sections 1798.24 and 1798.40 and California Code of Regulations Title 15, section 3400.  Personnel files also are protected under California Evidence Code section 1040, *et. seq.*, including section 1043.  Defendants further object as this request seeks appeals by other inmates which are confidential and private in nature, disclosure of which violates inmate privacy.  This request also calls for official information acquired in confidence by a public employee in the course of his or her duty and not open, or officially disclosed, to the public prior to the time the claim of privilege is made.  Cal. Code Regs. tit. 15, § 3400; Penal Code sections 832.7, 832.8, Cal. Gov. Code § 6254; Civil Code §§ 1798.24, 1798.40; California Evidence Code § 1040, *et. seq.*, including § 1043.  *See* Declaration of A. Lewis in support of Defendants' Privilege Log and Defendants' Privilege Log.
>
> Without waiving these objections, Defendants respond as follows: *See* Appeal Log Number HDSP-O-15-00167 (Bates DEFS 00001-0064; DEFS 0237-0257; DEFS 0322-0336); Appeal Log Number HDSP-D-14-02961 (Bates DEFS 0065-0130; DEFS 0258-0312); Appeal Log Number HDSP-D-15-01009 (Bates DEFS 0131-0174); Appeal Log Number HDSP-D-15-01412 (Bates DEFS 0175-0203; DEFS 0313-0321); and Appeal Log Number HDSP-O-15-01685 (Bates DEF 0204-0236).

ECF No. 82-1 at 14-15.

Plaintiff argues that defendants' objections should be overruled because most of the information requested is publicly accessible or can be redacted.  ECF No. 80 at 2.  He requests that the court require defendants to produce "documents related to use of force by staff to include, but not limited to, battery on non-inmate charges pending in Lassen County DA's Office from 2013-2016, battery on staff—at HDSP—statistics prior to and after housing and body cameras were installed, defendants' personnel files for misconduct, etc." Id. at 3; ECF No. 87 at 5-8.  He also requests copies of all inmate grievances filed against defendants for unnecessary and excessive force and documents related to defendant Smith's divorce.  ECF No. 80 at 4; ECF No. 87 at 8.

With the exception of the requests for grievances and the portion of defendants' personnel files containing complaints of misconduct, the documents plaintiff seeks to compel far exceed the scope of the request and the motion to compel will be denied as to those documents.  As for plaintiff's requests for grievances and defendants' personnel files, defendants argue that plaintiff's request for "all" documents alleging "mistreatment" far exceed the scope of the complaint and is unduly burdensome because it would require prison staff to hand-review every inmate complaint for responsive documents.  ECF No. 82 at 8.  The objections to the scope and burden of the request are well taken.  Although plaintiff now states that he is requesting grievances alleging unnecessary and excessive force, he does not limit the timeframe of the request or address defendants' assertion that identifying responsive grievances would require prison staff to hand-review every inmate grievance.[2]  The court finds that even if the scope of the request were limited, the burden on defendants in producing responsive documents would be disproportionate to the needs of the case and the request for further production will be denied.

> **Request for Production No. 3:** Any and all policies, directives, or instructions to staff concerning the use of force on an inmate who is handcuffed and/or on the ground in a prone position.
>
> **Response to Request for Production No. 3:** Objection.  This request is overbroad as to time, is unduly burdensome, and is not

---

[2]  Although defendants do not specify the nature of the grievances produced to plaintiff in response to the request, based on attachments to their previous exhaustion-based motion for summary judgment, they appear to be grievances filed by plaintiff.  ECF Nos. 41-3, 41-4.

proportional to the needs of this case under Federal Rule of Civil Procedure 26(b)(1). These documents as also equally available to Plaintiff in his institution's law library. This request also assumes facts not in evidence. This request seeks information that is deemed confidential under Cal. Code Regs. tit. 15, § 3321, the disclosure of which could: (1) endanger the safety of other inmates and staff of the CDCR, or (2) jeopardize the security of the institution. Additionally, the production of confidential information is improper on the grounds that an inmate shall not have access to information designated confidential. Cal. Code Regs. tit. 15, § 3370(d). This request also calls for official information acquired in confidence by a public employee in the course of his or her duty and not open, or officially disclosed, to the public prior to the time the claim of privilege is made. Cal. Code Regs. tit. 15, § 3400; Penal Code sections 832.7, 832.8, Cal. Gov. Code § 6254; Civil Code §§ 1798.24, 1798.40; California Evidence Code § 1040, *et. seq.*, including § 1043. *See* Declaration of A. Lewis in support of Defendants' Privilege Log and Defendants' Privilege Log.

Without waiving said objections, and assuming Plaintiff is referring to the use of force policies in effect at the time of the incident in 2014, Defendants respond as follows: *See* relevant Title 15 sections (Bates DEFS 0337-0345); relevant DOM sections (Bates DEFS 0346-0357).

ECF No. 82-1 at 16.

Plaintiff requests the court order further production to Request for Production No. 3, but neither the motion nor the reply offers any explanation as to why defendants' response was deficient or the objections unjustified. ECF No. 80; ECF No. 87. The motion to compel will therefore be denied as to this request.

**Request for Production No. 5:** Any and all documents, including but not limited to use of force reports, created by any HDSP staff member or any other Department of Correction employee or official concerning any use of force incident involving the plaintiff or defendants, or any investigation or action concerning that incident.

**Response to Request for Production No. 5:** Objection. This request is overbroad as to time, is unduly burdensome, and is not proportional to the needs of this case under Federal Rule of Civil Procedure 26(b)(1). This request seeks information that is deemed confidential under Cal. Code Regs. tit. 15, § 3321, the disclosure of which could: (1) endanger the safety of other inmates and staff of the CDCR, or (2) jeopardize the security of the institution. Additionally, the production of confidential information is improper on the grounds that an inmate shall not have access to information designated confidential. Cal. Code Regs. tit. 15, § 3370(d). Personnel-related files are subject to the qualified privilege of official information and a federal common law privilege. *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1033-34 (9th Cir. 1991). Personnel files,

1      including staff complaints contained therein, are also protected by
2      the privacy rights of staff, including federal common law and
applicable California statutes including Penal Code sections 832.7,
832.8, Government Code section 6254 and Civil Code sections
3      1798.24 and 1798.40 and California Code of Regulations Title 15,
section 3400. Personnel files also are protected under California
4      Evidence Code section 1040, *et. seq.*, including section 1043.
Defendants further object as this request seeks appeals by other
5      inmates which are confidential and private in nature, disclosure of
which violates inmate privacy. *See* Declaration of A. Lewis in
6      support of Defendants' Privilege Log and Defendants' Privilege Log.

7      Without waiving these objections, Defendants respond as follows:
*See* Redacted Incident Report Log Number HDSP FCO 14 080272
8      (Bates DEFS 0432-0491; DEFS 0404-0430) and RVR Log No. FC-
14-08-013 (Bates DEFS 0492-0502). The use of force video
9      interview of Plaintiff conducted on January 15, 2015 (Bates DEFS
0431) and the color photos as listed in Incident Report Log Number
10      HDSP FCO 14 080272 (Bates DEFS 0404-0430) are both being
produced under supervised viewing via Plaintiff's institution's
11      litigation department. These items are considered contraband and
cannot be physically possessed by inmates.

12

13 ECF No. 82-1 at 17-18.

14         Plaintiff requests the court order further production to Request for Production No. 5 and

15 asserts that it seeks the same documentation covered in Request for Production No. 1. ECF No.

16 87 at 9. It appears that plaintiff is seeking to expand the scope of this request in the same manner

17 he sought to expand Request for Production No. 1, and the motion to compel as to this request

18 will therefore be denied.

19      IV.     Motion to Strike

20         Plaintiff has filed a motion to strike "all incident reports by defendants Smith and Rossi"

21 and Harwood's medical examination because they "lack reliability." ECF No. 83. He also

22 requests that the court redact five photographs of him that include a placard stating "Battery on a

23 P.O. resulting in U.O.F." under type of charge. <u>Id.</u> at 3. Plaintiff does not identify where in the

24 record these documents exist, nor does he provide any grounds for striking them other than his

25 own conclusory assertion that they are unreliable because defendants are lying. To the extent

26 plaintiff seeks redaction of the photographs, he provides no grounds for such redaction. For these

27 reasons, the motion to strike will be denied.

28 ////

1      V.      Motion for Copies

2          Plaintiff has filed a motion requesting that the court order defendants or the prison to

3  provide him with copies of trial transcripts and his discovery requests because they were stolen by

4  prison staff.  ECF No. 84.  In response, defendants state that they provided plaintiff with copies of

5  the requested documents after receiving a letter from him stating that the documents were missing

6  (ECF No. 86), and plaintiff has acknowledged receipt of the requested documents (ECF No. 87 at

7  2).  The motion will therefore be denied as moot.

8      VI.     Motion for Summary Judgment

9          A.      Defendants' Arguments

10          Defendants argue that they are entitled to summary judgment on the grounds that plaintiff's

11  excessive force and failure to protect claims are barred by Heck v. Humphrey, 512 U.S. 477

12  (1994), and defendants were not deliberately indifferent to plaintiff's mental health and medical

13  needs.  ECF No. 88-2 at 18-28.  Alternatively, they argue they are entitled to qualified immunity.

14  Id. at 28-30.

15          B.      Plaintiff's Response

16          At the outset, the court notes that plaintiff has failed to comply with Federal Rule of Civil

17  Procedure 56(c)(1)(A), which requires that "[a] party asserting that a fact . . . is genuinely

18  disputed must support the assertion by . . . citing to particular parts of materials in the record."

19  Plaintiff has also failed to file a separate document in response to defendants' statement of

20  undisputed facts that identifies which facts are admitted and which are disputed, as required by

21  Local Rule 260(b).

22          "Pro se litigants must follow the same rules of procedure that govern other litigants."

23  King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987) (citation omitted), overruled on other grounds,

24  Lacey v. Maricopa County, 693 F.3d 896, 928 (9th Cir. 2012) (en banc).  However, it is well-

25  established that district courts are to "construe liberally motion papers and pleadings filed by *pro*

26  *se* inmates and should avoid applying summary judgment rules strictly."  Thomas v. Ponder, 611

27  F.3d 1144, 1150 (9th Cir. 2010).  The unrepresented prisoner's choice to proceed without counsel

28  "is less than voluntary" and they are subject to "the handicaps . . . detention necessarily imposes

9

1  upon a litigant," such as "limited access to legal materials" as well as "sources of proof."

2  Jacobsen v. Filler, 790 F.2d 1362, 1364 n.4 (9th Cir. 1986) (alteration in original) (citations and

3  internal quotation marks omitted).  Inmate litigants, therefore, should not be held to a standard of

4  "strict literalness" with respect to the requirements of the summary judgment rule.  Id. (citation

5  omitted).

6       Accordingly, the court considers the record before it in its entirety despite plaintiff's

7  failure to be in strict compliance with the applicable rules.  However, only those assertions in the

8  opposition which have evidentiary support in the record will be considered.

9       Plaintiff opposes the motion for summary judgment and argues that his excessive force

10 and failure to protect claims are not barred by Heck because he was wrongly convicted and he has

11 never claimed he was acting in self-defense.  ECF No. 90 at 3-5.  He further argues that

12 defendants were deliberately indifferent to his medical and mental health needs.  Id. at 6-11.

13                C.       Legal Standards for Summary Judgment

14      Summary judgment is appropriate when the moving party "shows that there is no genuine

15 dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

16 Civ. P. 56(a).  Under summary judgment practice, "[t]he moving party initially bears the burden

17 of proving the absence of a genuine issue of material fact."  In re Oracle Corp. Sec. Litig., 627

18 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  The

19 moving party may accomplish this by "citing to particular parts of materials in the record,

20 including depositions, documents, electronically stored information, affidavits or declarations,

21 stipulations (including those made for purposes of the motion only), admissions, interrogatory

22 answers, or other materials" or by showing that such materials "do not establish the absence or

23 presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to

24 support the fact."  Fed. R. Civ. P. 56(c)(1).

25      "Where the non-moving party bears the burden of proof at trial, the moving party need

26 only prove that there is an absence of evidence to support the non-moving party's case."  Oracle

27 Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B).

28 Indeed, summary judgment should be entered, "after adequate time for discovery and upon

motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.  In such a circumstance, summary judgment should "be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c).  The opposing party must demonstrate that the fact in contention is material, i.e., a fact "that might affect the outcome of the suit under the governing law," and that the dispute is genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968).  Thus, the "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Matsushita, 475 U.S. at 587 (citation and internal quotation marks omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact, [the court] draw[s] all inferences supported by the evidence in favor of the non-moving party." Walls v. Cent. Contra Costa Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (citation omitted).  It is the

11

1    opposing party's obligation to produce a factual predicate from which the inference may be

2    drawn.  See Richards v. Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to

3    demonstrate a genuine issue, the opposing party "must do more than simply show that there is

4    some metaphysical doubt as to the material facts."  Matsushita, 475 U.S. at 586 (citations

5    omitted).  "Where the record taken as a whole could not lead a rational trier of fact to find for the

6    non-moving party, there is no 'genuine issue for trial.'"  Id. at 587 (quoting First Nat'l Bank, 391

7    U.S. at 289).

8            Defendants simultaneously served plaintiff with notice of the requirements for opposing a

9    motion pursuant to Rule 56 of the Federal Rules of Civil Procedure along with their motion for

10   summary judgment.  ECF No. 88-9; see Klingele v. Eikenberry, 849 F.2d 409, 411 (9th Cir.

11   1988) (pro se prisoners must be provided with notice of the requirements for summary judgment);

12   Rand v. Rowland, 154 F.3d 952, 960 (9th Cir. 1998) (en banc) (movant may provide notice).

13            D.      Undisputed Material Facts

14            Local Rule 260(b) requires that the response to the moving party's statement of

15   undisputed facts identify which facts are admitted and which are disputed.  Though plaintiff has

16   included a section entitled "Plaintiff Disputes Defendant's MSJ Statement of Facts," he does not

17   specifically identify which statements of fact are admitted and which are disputed.  ECF No. 90 at

18   2-3.  To the extent the court is able to identify which statements are disputed, plaintiff has also

19   failed to support the disputes with any citations to the record as required by Federal Rule of Civil

20   Procedure 56(c)(1)(A).[3]  The facts are therefore deemed undisputed except as otherwise

21   discussed.

22            i.   The Parties

23            At all times relevant to the complaint, plaintiff was an inmate in the custody of the

24   California Department of Corrections and Rehabilitation (CDCR) and housed at High Desert

25   State Prison (HDSP) on Facility C, Building 3 (C3).  Defendants' Statement of Undisputed Facts

26   (DSUF) (ECF No. 88-1) ¶ 2.  At all times relevant to the complaint, defendants Smith and Rossi

27

28   [3]  Despite plaintiff's failure to provide any citations, the court has noted where any factual
     disputes raised by plaintiff are supported by the allegations in his verified complaint.

1  were employed at HDSP as correctional officers and Harwood was employed as a licensed

2  vocational nurse (LVN).  DSUF ¶¶ 3, 6.

3          ii.  Use of Force Incident

4      At approximately 8:30 a.m. on August 13, 2014, Smith was in the Officer's Office in

5  Facility C, Building 4 (C4), when he overheard plaintiff and his counselor having a conversation

6  in the counselor's office, which was next to the Officer's Office.  DSUF ¶ 7.  When plaintiff's

7  voice took an elevated and threatening tone and the counselor sounded timid and threatened,

8  Smith went over to the counselor's office to ask if the meeting was over.  Id.  When the counselor

9  stated it was, Smith ordered plaintiff to return to his housing unit (C3), which was located in a

10  different building next to C4.  Id.  Plaintiff was aware that he was supposed to return to his

11  building at that time.  Id.  The parties dispute whether Rossi was in the housing unit at that time

12  or present for the exchange.  DSUF ¶ 8; ECF No. 90 at 2; ECF No. 1 at 3.

13      Plaintiff's return to his housing unit was Smith's responsibility because Smith was the one

14  who ordered his return, and after plaintiff left C4, the control booth officer informed Smith that

15  plaintiff had not returned to his housing unit and was instead heading toward the patio area.

16  DSUF ¶ 13.  The patio was approximately 150-200 yards straight across from C3, while C4 was

17  located approximately 100 feet to the left of C3.  DSUF ¶ 12.  The patio was where programming,

18  including medical and mental health, were located, and inmates were not permitted to loiter

19  around on the patio.  DSUF ¶¶ 12-13.

20      Smith waited before approaching plaintiff on the patio and instructing him to return to his

21  housing unit again in order to allow plaintiff time to "cool off" since plaintiff had been agitated in

22  the meeting with his counselor.  DSUF ¶ 15.  Correctional staff are trained to provide inmates

23  with a "cooling off" period in order to de-escalate situations and avoid the need to use force.  Id.

24  Plaintiff disputes that he required any time to "cool off."  ECF No. 90 at 2.  By the time Smith left

25  C4 to instruct plaintiff to return to his housing unit and escort him as necessary, plaintiff was

26  already out of Smith's sight and on the patio.  DSUF ¶ 16.

27      When Smith entered the patio, he saw plaintiff standing with a group of inmates in the

28  area where inmate receive quarterly packages rather than in the area for medical appointments,

which was on the opposite side of the patio.  Id.  At the time, Rossi was on the patio observing inmate movement and Smith approached plaintiff alone.  Id.  Plaintiff asserts that Rossi was with Smith the entire time and disputes that he was standing with a group of inmates, claiming instead that he was standing in the area designated for mental health while the other inmates were in the area designated for education.  ECF No. 90 at 2-3; ECF No. 1 at 3-4.

Upon approaching plaintiff, Smith ordered plaintiff to return to his housing unit and plaintiff responded, "Do what you got to do," and turned to face the wall while placing his hands behind his back.  DSUF ¶ 17.  Smith thought this was odd because plaintiff did not need to be handcuffed and just needed to return to his housing unit but proceeded to handcuff plaintiff anyway.  Id.  Defendants assert that it was at this time Rossi approached to provide assistance. Id.

After plaintiff was handcuffed, Rossi took plaintiff's right arm while Smith took plaintiff's left arm, and they began escorting plaintiff to his housing unit.  DSUF ¶ 18.  As they exited the patio, Smith felt plaintiff's body become rigid and he flexed his left bicep.  Id. Concerned there may be an issue, Smith and Rossi turned plaintiff toward the yard wall and Smith told plaintiff he was going to Building 3.  Id.  Plaintiff asserts that he had attempted to fall to his knees to go prone and Smith and Rossi put him against the wall.  ECF No. 1 at 4.  Smith and Rossi did not slam plaintiff into the wall or smash or press his face into the wall.  DSUF ¶¶ 18-19; ECF No. 88-10 at 103 (Trial transcript at 160:6-28).  Because Smith found plaintiff's behavior odd, he paused for a bit to see if plaintiff had any concerns to express before continuing the escort.  DSUF ¶ 18.  When plaintiff said nothing and relaxed his body, the escort continued. DSUF ¶¶ 18, 20.  At this point, the parties' versions of events diverge.

a.  Defendants' Version

Defendants state that as they took a step toward C3, plaintiff forcefully turned his upper body toward Smith while lunging his upper body, leading with his head, toward Smith's body in an effort to head-butt him.  DSUF ¶ 20.  Plaintiff did not attempt to fall, drop to his knees, or assume the prone position.  Id.  Smith quickly leaned to his left and moved his head back to avoid plaintiff's head hitting him in the face and plaintiff instead struck Smith's right bicep with his

14

right shoulder. Id.  Plaintiff then twisted his upper body back to the right toward Rossi and, leading with his elbow, struck Rossi in his left ribcage. DSUF ¶ 21. Fearing for their safety, Smith placed his left hand on plaintiff's left shoulder area while maintaining a grip on plaintiff's left arm with his right hand while Rossi did the same on plaintiff's right side. DSUF ¶ 22. Smith and Rossi then used their body weight and physical strength to force plaintiff to the ground in order to maintain control of him and prevent any further attack. Id.  Plaintiff landed on his right side and Smith landed on his knees on the gravel and asphalt ground near plaintiff's shoulders, at which point plaintiff attempted to head butt Smith again on his right thigh area, though he did not make contact. DSUF ¶ 23. Neither defendant dragged plaintiff across the ground. Id.

Smith lost his grip on plaintiff's left arm when he went to the ground and in order to regain control Smith placed his right leg on the side of plaintiff's head and used about one-third of his body weight to attempt to stop plaintiff from twisting his shoulders, lunging his head in Smith's direction, spitting on him, or biting him. DSUF ¶ 24. Smith did not use his hands because he was afraid plaintiff would bite him, given his aggressive behavior, and he did not put his body weight on plaintiff's upper back because it can restrict breathing. Id.  While on the ground, Rossi placed his left forearm on plaintiff's lower back while his right arm maintained control of plaintiff's legs as he bent them at plaintiff's knees toward plaintiff's buttocks. Id. Rossi used his body strength and weight to try and maintain control of plaintiff, but plaintiff ignored orders to lay prone and stop thrashing his upper body and continued to twist his hips and torso. Id.  Throughout the incident, Smith and Rossi gave plaintiff multiple orders to stop resisting and neither officer placed their knees on plaintiff's back. DSUF ¶ 25.

When responding staff arrived, another officer placed plaintiff in leg restraints and two other officers took custody of plaintiff after Smith informed them that plaintiff had battered him and Rossi. DSUF ¶ 27. Smith and Rossi then walked away from the incident to be medically evaluated and cleared to return to work. Id.  Neither defendant had any further involvement with the incident. DSUF ¶ 29. The entire incident, from the time defendants placed plaintiff against the wall to when other officers responded and took control of plaintiff, took approximately thirty seconds. DSUF ¶ 28. Defendants assert that the level of force they used was in line with

15

applicable policy and that they used only the force that was necessary to gain control of plaintiff.
DSUF ¶¶ 26, 30.  They also state that the incident took place in open view of the staff and
inmates on the yard.  DSUF ¶ 36.

b.  Plaintiff's Version

Plaintiff asserts that he never attacked Smith and Rossi and that they fabricated their
reports to cover up the fact that they dragged and beat him while he was handcuffed.  ECF No. 90
at 3-5.  He claims that after moving away from the wall, he fell to his knees in order to go prone
and Smith and Rossi dragged him out of view of the other inmates before slamming him on the
ground.  ECF No. 1 at 5.  Once plaintiff was on the ground, Smith "jumped on his head and upper
back with his knees and bodyweight" and moved his knee back and forth on plaintiff's head,
grinding plaintiff's face into the gravel.  Id. at 5, 7.  When plaintiff told Smith he could not
breathe, Smith told him he did not care if plaintiff died.  Id.

iii.  Medical Treatment Following Use of Force

At approximately 8:37 a.m., defendant Harwood was notified that an inmate needed a
medical evaluation after an incident on the yard and she saw plaintiff at approximately 8:55 a.m.
to evaluate him and complete a CDCR Form 7219 Medical Report.  DSUF ¶ 40.  During the
evaluation, Harwood noted pain to plaintiff's right jaw area and abrasions/scratches to the area
above plaintiff's right eye, both wrists, both knees, and behind his left ear.  DSUF ¶ 41.  All
injuries were considered minor and superficial, not requiring any stitches or further treatment.
DSUF ¶ 42.  Because Harwood was an LVN, it was not up to her whether additional treatment
was needed, and she notified and consulted with the supervising RN at 8:55 a.m. regarding
plaintiff's condition.  DSUF ¶ 42.  She provided a detailed listing and description of plaintiff's
injuries, after which the RN determined that plaintiff did not need a higher level of care, treatment
for any of his minor injuries, or medication.  Id.  With the RN's approval, Harwood medically
cleared plaintiff for placement in the administrative segregation unit at 8:55 a.m.  DSUF ¶ 43.
Plaintiff alleges that he suffered cuts on his face and wrists, as well as injuries to his ear, neck,
back, head, and jaw, but while Harwood documented all of his injuries, she did not provide him
with pain medication, ointment, or dressings.  ECF No. 1 at 5, 12.  He argues that his injuries

were major, not minor, and that Harwood failed to "document [his injuries] significance accurately" or forward follow ups for his injuries.  ECF No. 90 at 6-7.

LVNs are not permitted to provide inmate patients with medications without a doctor's order and are only permitted to perform basic medical functions such as taking vital signs, completing form 7219 reports, and providing doctor approved medications and dressings.  DSUF ¶ 39.  They are only permitted to perform medical functions as authorized by a doctor or supervised by a registered nurse (RN) under specific RN protocols and consult with RNs to determine if an inmate needs medication or care beyond that which an LVN is authorized to provide.  Id.

The day after the incident, plaintiff submitted a health care services request in which he complained of injuries to his wrists, eye, forehead, knees, ear, and jaw; stated that it had gotten worse within the last twenty-four hours; and requested a painkiller and ointment.  DSUF ¶ 47.  In response to the request, plaintiff was seen by an RN the following day.  DSUF ¶ 48.  The RN noted that plaintiff complained primarily of a headache and his minor abrasions, that there were "minor/superficial abrasions to the areas listed," and that "all are almost completely healed."  Id. The RN further noted that plaintiff had scabs on his knees that had started to harden and crack but that there was no active bleeding or signs of infection, and she provided plaintiff with an antibiotic ointment to keep the scab soft and Tylenol.  DSUF ¶¶ 48-49.  Plaintiff did not require any further medical treatment for his abrasions.  DSUF ¶ 51.  When Harwood saw plaintiff, his knee abrasions had not started to scab over and antibiotic ointment was not medically indicated and she was not authorized to provide plaintiff with ointment or Tylenol absent an order from an RN.  DSUF ¶¶ 49-50.

iv.   Plaintiff's Mental State

Plaintiff did not feel suicidal when he left his counselor's office.  DSUF ¶ 9.  As plaintiff left C4, neither Smith nor Rossi heard plaintiff tell the control booth officer or patio tower officer that he was having mental health issues or that he wanted to see a mental health provider, nor were defendants notified of any such conversations.  DSUF ¶ 10.  Plaintiff did not tell the patio tower officer or any officers on the patio that he was suicidal.  DSUF ¶ 14.  Had plaintiff notified

17

an officer that he was feeling suicidal, the officer would have been required by policy to put the

yard or building down and call for a medical code.  DSUF ¶ 11.  Staff would have then placed

plaintiff in handcuffs, placed him in a holding cell, and at least one staff member would have

stayed to monitor him while waiting for medical and mental health staff to arrive and assess

plaintiff's condition.  Id.  If plaintiff had stated he was suicidal, directing him to go stand on the

patio and wait for medical to come would have been a violation of policy.  Id.  Vague statements

of mental health issues do not require suicidal ideation protocols.  Id.

At no time did plaintiff tell either Smith or Rossi that he needed to see mental health staff,

was having mental health issues, was suicidal, or "felt like dying," nor did Smith tell plaintiff that

he did not care if plaintiff died.  DSUF ¶¶ 31-32, 34.  Had plaintiff indicated he was suicidal or

having a mental health emergency, Smith and Rossi would have followed the steps required by

policy.  DSUF ¶ 33.  Plaintiff disputes this and states that he told Smith and Rossi he was suicidal

both before and after he was handcuffed.  ECF No. 90 at 8.

After the use of force, plaintiff did not tell Harwood that he was suicidal while she was

evaluating him.  DSUF ¶ 44.  The day after the incident, plaintiff submitted a health services

request that made no mention of mental health concerns, and he did not notify the nurse who saw

him in regard to the health care request that he was suicidal or had mental health concerns.  DSUF

¶ 48.  Nor did he ever tell mental health staff in the ASU—who conducted daily rounds to check

on plaintiff's mental health—that he was suicidal or had mental health concerns.  DSUF ¶ 46.

On August 18, 2014, plaintiff's mental health was evaluated by a psychologist.  DSUF

¶ 52.  Plaintiff had no history of suicide attempts, his acute and chronic suicide risk was low, and

he denied any suicidal or homicidal ideation.  Id.  On August 29, 2014, plaintiff was evaluated by

a social worker to determine if his mental health contributed to the incident on August 13, 2014.

DSUF ¶ 53.  The social worker determined that plaintiff's mental disorder did not contribute to

his behavior which led to the incident.  Id.  Plaintiff admits that after the incident he did not notify

anyone that he was feeling suicidal.  ECF No. 90 at 9-10.

////

////

18

1               v.    Criminal and Disciplinary Proceedings

2         As a result of the August 13, 2014 incident, plaintiff was criminally charged in Lassen

3 County Superior Court Case No. CH032699 with two counts of battery on a non-confined

4 person:[4] one count for battery of Smith and one count for battery of Rossi.  DSUF ¶ 54.  At trial,

5 plaintiff denied striking or battering Smith and Rossi and testified that they dragged him,

6 slammed him on the ground, and "tuned him up."  DSUF ¶ 55.  On December 8, 2015, a jury

7 convicted plaintiff of both counts of battery by an inmate on a non-confined person.  DSUF ¶ 56.

8 Plaintiff was sentenced to six years in prison and the conviction has not been overturned.  DSUF

9 ¶¶ 57-58.  Plaintiff was also issued a rules violation report and he was found guilty of battery on a

10 peace officer and assessed a loss of 150 days of credit.  DSUF ¶¶ 59-60.  The disciplinary

11 conviction also has not been overturned.  DSUF ¶ 61.

12              E.      Request for Judicial Notice

13         Defendants' motion includes a request that the court take judicial notice of court filings,

14 orders, and transcripts from Lassen County Superior Court Case No. CH032699 and rules

15 violation report Log No. FC-14-08-013.  ECF No. 88-10.  "The court may judicially notice a fact

16 that is not subject to reasonable dispute because it: (1) is generally known . . . or (2) can be

17 accurately and readily determined from sources whose accuracy cannot reasonably be

18 questioned."  Fed. R. Evid. 201(b).  Accordingly, the request for judicial notice will be granted.

19             F.      Discussion

20                 i.   Heck Bar

21                      a.   Legal Standard

22        "[A] state prisoner's claim for damages is not cognizable under 42 U.S.C. § 1983 if 'a

23 judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or

24 sentence,' unless the prisoner can demonstrate that the conviction or sentence has previously been

25 invalidated."  Edwards v. Balisok, 520 U.S. 641, 643 (1997) (quoting Heck, 512 U.S. at 487).

26

27  [4]  Defendants state that plaintiff was charged with battery on a peace officer, but the criminal

28 complaint and original and amended information show that he was charged with battery on a non-confined person.  ECF No. 88-10 at 26-27, 29-30, 32-33.

The so-called "Heck bar" also applies to prison disciplinary decisions that resulted in the deprivation of good-time credits. Id. at 647-48. "[I]f the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed." Heck, 512 U.S. at 487 (emphasis in original). "In evaluating whether claims are barred by Heck, an important touchstone is whether a § 1983 plaintiff could prevail only by negating 'an element of the offense of which he has been convicted.'" Cunningham v. Gates, 312 F.3d 1148, 1153-54 (9th Cir. 2002) (quoting Heck, 512 U.S. at 487 n.6).

### b.  Disciplinary Conviction

With respect to defendants' argument that plaintiff's excessive force claims are Heck barred due to his disciplinary conviction, even assuming that success in this action would invalidate the loss of good time credits, defendants have failed to produce evidence showing that plaintiff has a determinate sentence or has been found suitable for parole, such that success in this case would necessarily result in plaintiff's speedier release. "[C]hallenges to disciplinary proceedings are barred by Heck only if the § 1983 action would be 'seeking a judgment at odds with [the prisoner's] conviction or with the State's calculation of time to be served.'" Nettles v. Grounds, 830 F.3d 922, 928-29 (9th Cir. 2016) (second alteration in original) (quoting Muhammad v. Close, 540 U.S .749, 754-55 (2004)).  Absent such a showing, defendants have failed to establish that the disciplinary conviction bars plaintiff's claims.

### c.  Criminal Conviction

Defendants argue that because the alleged excessive force and the conduct forming the basis of plaintiff's convictions are so intertwined, a judgment in plaintiff's favor would necessarily imply the invalidity of the battery convictions. ECF No. 88-2 at 19-22.  They assert that a denial of their motion

> essentially finds that Plaintiff did not refuse multiple lawful orders, did not attempt to head-butt Smith or strike him in the bicep, did not elbow Rossi, and did not attempt to further head-butt and kick the officers while on the ground, further resisting lawful orders and trying to attack the officers, and that Smith and Rossi did not then respond to Plaintiff's attack by using reasonable force to subdue him

1
2
and protect themselves, and that Defendants did not act reasonably
in the situation.

3   Id. at 21-22.  Plaintiff argues that he was wrongfully convicted, that the allegations in the

4   complaint differ from the facts on which he was convicted, and that defendants' version of events

5   is fabricated.  ECF No. 90 at 3-5.

6          "To decide whether success on a section 1983 claim would necessarily imply the

7   invalidity of a conviction, [the court] must determine which acts formed the basis for the

8   conviction."  Lemos v. County of Sonoma, 40 F.4th 1002, 1006 (9th Cir. 2022).  When the

9   conviction is based on a jury verdict, "a court must look at the record of the criminal case—

10  including the jury instructions—to determine which facts the jury necessarily found."  Id.

11  (citations omitted).

12         To the extent plaintiff premises his claim on a theory that *any* use of force was excessive

13  because it was unprovoked, the claim is barred by Heck.  See Cunningham, 312 F.3d at 1153

14  (Heck bars "claims under § 1983 if they are based on *theories* that 'necessarily imply the

15  invalidity of his conviction[s] or sentence[s].'" (alteration in original) (emphasis added) (quoting

16  Heck, 512 U.S. at 487)).  However, this does not bar plaintiff from proceeding on a theory that

17  the force used in response to his battery of defendants was more than necessary to subdue him

18  and therefore excessive.  See Rodriguez v. City of Modesto, 535 F. App'x 643, 645 (9th Cir.

19  2013) (Heck does not bar claim that officers "though having a right to use reasonable force . . .

20  responded with excessive force" (citing Hooper v. County of San Diego, 629 F.3d 1127, 1132

21  (9th Cir. 2011)); Yount v. City of Sacramento, 43 Cal. 4th 885, 898-99 (2008)); Smith v. City of

22  Hemet, 394 F.3d 689, 693 (9th Cir. 2005) (excessive force claim not be barred by Heck where

23  excessive force takes place "subsequent to the time [plaintiff] engaged in the conduct that

24  constituted the basis for his conviction").

25         Relying on Cunningham v. Gates, 312 F.3d 1148 (9th Cir. 2002), and Beets v. County of

26  Los Angeles, 669 F.3d 1038 (9th Cir. 2012), defendants argue that plaintiff's convictions bar any

27  claim for excessive force or failure to protect because there was no break between plaintiff's

28  actions and defendants' use of force, bringing defendants' conduct within the temporal scope of

plaintiff's crime.  ECF No. 88-2 at 20.  However, this case is distinguishable from <u>Cunningham</u> and <u>Beets</u>.

In <u>Cunningham</u>, the plaintiff was convicted of felony-murder, which "required the jury to find that he intentionally provoked the deadly police response, . . . that he did not act in self-defense," and "that the police response was a natural consequence of Cunningham's provocative act." 312 F.3d at 1154-55.  He was also convicted of attempted murder, which required that the jury find "he knew or should have known that they were police officers acting within the scope of their duties." <u>Id.</u> at 1154.  In <u>Beets</u>, elements of the plaintiff's underlying criminal conviction included that the officer was "lawfully performing his duties as a peace officer" and not "using unreasonable or excessive force in his or her duties." 669 F.3d at 1045.

In this case, defendants have produced evidence showing that plaintiff was convicted of two counts of California Penal Code § 4501.5, battery by a prisoner on a non-confined person. Section 4501.5 provides that "[e]very person confined in a state prison of this state who commits a battery upon the person of any individual who is not himself a person confined therein shall be guilty of a felony," while Penal Code § 242 defines battery as "any willful and unlawful use of force or violence upon the person of another."  There is no indication from the elements of the offense that the jury had to make any factual findings related to the lawfulness of defendants' conduct[5] or the events that occurred after plaintiff struck defendants.  Defendants have also failed to provide a copy of the jury instructions given,[6] leaving the court unable to determine which facts the jury necessarily found beyond the fact that plaintiff battered defendants when he struck

---

[5]  Unlike other forms of battery that require the officer be engaged in the performance of their duties and therefore acting lawfully, <u>see, e.g.</u>, Cal. Penal Code. § 243(b)-(c) (battery against peace officer or custodial officer in performance of their duties); Cal. Penal Code § 243.1 (battery against custodial officer in performance of duties); <u>see also</u> <u>People v. Cruz</u>, 44 Cal. 4th 636, 673 (2008) (where statute makes it a crime to commit act against peace officer engaged in performance of their duties, officer was necessarily acting lawfully at the time (citation omitted)), § 4501.5 contains no such requirement and the record indicates that the trial judge denied defense counsel's request for an instruction regarding lawful performance, <u>see</u> ECF No. 88-10 at 42 (jury trial minutes indicating judge denied request for CALCRIM 2671 instruction).

[6]  While the jury trial minutes submitted by defendants appear to identify some of the instructions provided to the jury, they also indicate that some of those instructions were modified, and it is unclear whether any additional instructions may have been provided.  ECF No. 88-10 at 42-43.

Smith in his right bicep and Rossi in the left ribcage.[7]  On the facts presented, none of the elements of the offense are inherently inconsistent with a finding that defendants used excessive force against plaintiff because a conviction for battery by a prisoner on a non-confined person does not necessarily require that the involved non-confined person was acting lawfully and without excessive force at the time the battery occurred or that defendants' conduct was a natural consequence of plaintiff's actions.

### d.  Conclusion

For the foregoing reasons, Heck bars plaintiff's claims for excessive force and failure to protect only in so far as they are based on a theory that he did not batter defendants.  To the extent the claims are premised on a theory that Smith responded to the battery with excessive force and Rossi failed to intervene, the claims are not barred.

### ii.  Deliberate Indifference

### a.  Legal Standard

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)).  This requires plaintiff to show (1) "a 'serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Id. (some internal quotation marks omitted) (quoting McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992)).

Deliberate indifference is established only where the defendant *subjectively* "knows of and disregards an excessive risk to inmate health and safety," Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) (emphasis added) (citation and internal quotation marks omitted), and "may appear when prison officials deny, delay or intentionally interfere with medical treatment," Hutchinson v. United States, 838 F.2d 390, 394 (9th Cir. 1988) (citation omitted).  However, a

---

[7]  For example, defendants argue that plaintiff's allegations that the force used was excessive implies that he had the right to "defend himself" (ECF No. 88-2 at 20), but there is no evidence the jury was instructed on self-defense and therefore necessarily found that plaintiff was not acting in self-defense.

23

difference of opinion between an inmate and prison medical personnel—or between medical professionals—regarding the appropriate course of treatment does not by itself amount to deliberate indifference to serious medical needs.  Toguchi, 391 F.3d at 1058; Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).  To establish that a difference of opinion rises to the level of deliberate indifference, plaintiff "must show that the chosen course of treatment 'was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk to [the prisoner's] health.'"  Toguchi, 391 F.3d at 1058 (quoting Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996)).

b.  Defendants Smith and Rossi

With respect to plaintiff's deliberate indifference claim against defendants Smith and Rossi, the parties dispute whether plaintiff told them that he was feeling suicidal and they ignored his statements.  Assuming plaintiff's version of events to be true, as the court must on defendants' motion for summary judgment, defendants are entitled to summary judgment on this claim.

The undisputed evidence shows that after the altercation between plaintiff and defendants, plaintiff was placed in administrative segregation where he had daily contact with mental health staff.  DSUF ¶ 46; ECF No. 88-6 at 4-6.  On the day of the assault and in the days that followed, plaintiff did not report any mental health concerns or express any suicidal ideation, and there is no evidence that he attempted to commit suicide or otherwise harm himself.  Id.  When plaintiff was later evaluated in relation to the disciplinary charge he received for battery on a peace officer, it was determined that his mental disorder did not contribute to the incident.  DSUF ¶ 53.

In order to state a claim for deliberate indifference based on the delay in receiving treatment, plaintiff must establish that the delay was harmful.  See Shapley v. Nev. Bd. of State Prison Comm'rs., 766 F.2d 404, 407 (9th Cir. 1985) (delay of surgery did not constitute deliberate indifference unless delay was harmful); Hallett v. Morgan, 296 F.3d 732, 746 (9th Cir. 2002) (delaying treatment does not establish deliberate indifference unless plaintiff proves delay led to further injury); Wood v. Housewright, 900 F.2d 1332, 1335 (9th Cir. 1990) (delay in treatment does not constitute Eighth Amendment violation unless it causes "substantial harm").  In this case, plaintiff does not argue that his mental health or physical condition was harmed by

the alleged delay, nor has he produced any evidence showing that his mental health or physical condition was harmed.  ECF No. 90 at 8-10.  Since there is no indication that Smith and Rossi's conduct did anything more than delay plaintiff's access to treatment and the delay was not harmful, there is no genuine dispute of a material fact regarding whether plaintiff was harmed by the delay in treatment and summary judgment on this ground should be granted.

c.  <u>Defendant Harwood</u>

There is no dispute that Harwood documented all of plaintiff's injuries, that she did not provide him with any treatment or medication for his injuries, and that she did not have authority to provide plaintiff with medications or dressings without an RN or doctor's order.  Instead, the parties dispute whether she accurately recorded and relayed the severity of the injuries, leading to a delay in plaintiff receiving treatment.  Defendants argue that Harwood was not authorized to provide treatment without an RN or doctor's order and plaintiff had only minor injuries that were not objectively serious.  ECF No. 88-2 at 26-28.  In response, plaintiff asserts that Harwood failed to accurately document the significance of his injuries and that the opinion of Dr. Marvin Pietruszka shows that his injuries were "lacerations, hemorrhaging, etc.  All major, not minor, injuries needing care/treatment."  ECF No. 90 at 6-7.  Defendants argue that Dr. Pietruszka's letter, which was attached to a previously filed motion for appointment of counsel but not to plaintiff's response, fails to create a triable issue of fact with regard to the severity of plaintiff's injuries and the need for treatment and that it should not be considered as evidence.  ECF No. 91 at 4, 7.

Although plaintiff disputes the accuracy of Harwood's description of his injuries, he fails to explain how the description was inaccurate beyond generally claiming he had "major" injuries that needed treatment.  During his deposition, the only inaccuracy he noted was that he believed the injury on his eyebrow should have been marked as a cut rather than as a scratch or abrasion, and he acknowledged that it did not require stitches.  ECF No. 88-7 at 30-32 (Depo. Transcript at 78:5-80:3).  Plaintiff also does not dispute the accuracy of the description of his injuries taken by the nurse who provided him with pain medication, bandages, and ointment two days after the incident.  That nurse described plaintiff's injuries as "very minor/superficial abrasions."  DSUF

25

¶ 48; ECF No. 88-5 at 11.  Additionally, while plaintiff does not explicitly state what treatment he believes was needed, based on the subsequent healthcare request he submitted and the allegations in the complaint, it appears the treatment he sought was pain medication, ointment, and dressing for his cuts and scrapes.  ECF No. 1 at 5, 12 (alleging Harwood did not provide pain medication or dressing for injuries, which he received from a different nurse in response to healthcare request); ECF No. 88-5 at 12 (healthcare request from day after incident requesting "some kind of pain killer and/or ointment").  He was eventually provided those things two days after the incident, and there is no evidence or allegation that he required any greater or additional treatment.

As for the letter from Dr. Pietruszka (ECF No. 78 at 6), even if the court were to consider the letter as evidence, it does not support plaintiff's alelgation that he suffered major injuries. The letter notes that the photographs plaintiff sent show "a bloody knee with recent hemorrhage and a large area of abrasion on one knee.  The other knee (side not labeled) reveals similar area of bleeding surrounded by a dark rim."  Id.  It further notes that injuries to plaintiff's wrists from handcuffs could not be confirmed, but that there was "recent hemorrhage of the right lateral eyebrow.  There is a small laceration/abrasion of the left hand over the wrist and a small abrasion of the helix of the left ear."  Id.

Considering the facts presented in the light most favorable to plaintiff, his injuries did not rise to the level of an objectively serious medical need or present an excessive risk to his health and safety.  See Jacques v. Lopez, No. 1:16-cv-1289 DAD SAB, 2019 WL 3546472, at *11-12, 2019 U.S. Dist. LEXIS 130752, at *33-35 (E.D. Cal. Aug. 5, 2019) ("cut to [plaintiff's] mouth, a cut to his left wrist, indentation marks on his wrists and ankles, a cut, swollen, and bruised lip, swelling to the right side of his head, the right groin area, and the left elbow, as well as a reddened area on the inside of his right arm" did not rise to level of objectively significant or serious medical need (collecting cases)), adopted 2019 WL 4811698, 2019 U.S. Dist. LEXIS 170616 (E.D. Cal. Sept. 30, 2019); Lipsey v. Samniego, No. 1:17-cv-1703 LJO JDP, 2019 WL 1431591, at *4, 2019 U.S. Dist. LEXIS 54544, at *9 (E.D. Cal. Mar. 29, 2019) ("Generally, minor scrapes and cuts that do not require stitches or medicine are not serious medical needs that

implicate the constitution." (collecting cases)), adopted 2019 U.S. Dist. LEXIS 122582 (E.D. Cal. Apr. 17, 2019).  Moreover, it is undisputed that Harwood was not authorized to provide plaintiff with any treatment or medication absent an order from a doctor or RN, and that RN Barton was the one who determined that plaintiff did not require treatment or medication.  Plaintiff has not presented any evidence demonstrating that Harwood's description of his injuries to RN Barton was inaccurate or otherwise deficient such that it would rise to the level of deliberate indifference.  Finally, while plaintiff argues that "[t]he delay in care of known injuries could have been worst [sic] had they gotten infected," ECF No. 90, he has not presented any evidence that the delay in treatment actually resulted in further injury, see Hallett, 296 F.3d at 746 (no deliberate indifference unless plaintiff proves delay led to further injury); Wood, 900 F.2d at 1335 (delay must cause "substantial harm").

For these reasons, summary judgment in defendant's favor is appropriate with respect to plaintiff's claim against defendant Harwood.

### iii.  Qualified Immunity

#### a.  Legal Standard

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) (citations omitted).  In analyzing a qualified immunity defense, the court must consider the following: (1) whether the alleged facts, taken in the light most favorable to the plaintiff, demonstrate that defendant's conduct violated a statutory or constitutional right; and (2) whether the right at issue was clearly established at the time of the incident.  Saucier v. Katz, 533 U.S. 194, 201 (2001), overruled in part by Pearson v. Callahan, 555 U.S. 223, 236 (2009) (overruling Saucier's requirement that the two prongs be decided sequentially).  "[S]ummary judgment based on qualified immunity is improper if, under the plaintiff's version of the facts, and in light of the clearly established law, a reasonable officer could not have believed his conduct was lawful."  Schwenk v. Hartford, 204 F.3d 1187, 1196 (9th Cir. 2000) (citing Grossman v. City of Portland, 33 F.3d 1200, 1208 (9th Cir. 1994)).

1     b.  Excessive Force and Failure to Protect

2          "[T]he Eighth Amendment places restraints on prison officials, who may not . . . use

3     excessive physical force against prisoners."  Farmer v. Brennan, 511 U.S. 825, 832 (1994) (citing

4     Hudson v. McMillian, 503 U.S. 1 (1992)).  "[W]henever prison officials stand accused of using

5     excessive physical force in violation of the [Eighth Amendment], the core judicial inquiry is . . .

6     whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously

7     and sadistically to cause harm."  Hudson, 503 U.S. at 6-7 (citing Whitley v. Albers, 475 U.S. 312

8     (1986)).  When determining whether the force was excessive, the court looks to "the extent of

9     injury suffered by an inmate . . . , the need for application of force, the relationship between that

10    need and the amount of force used, the threat 'reasonably perceived by the responsible officials,'

11    and 'any efforts made to temper the severity of a forceful response.'"  Hudson, 503 U.S. at 7

12    (quoting Whitley, 475 U.S. at 321).

13         Defendants do not separately address whether the force they used was excessive and

14    instead make only a conclusory assertion that it was not excessive as part of their argument that

15    the excessive force and failure to protect claims are barred by Heck.  ECF No. 88-2 at 21.

16    However, because the question of whether plaintiff's rights were violated is an element of the

17    qualified immunity analysis, the court will consider the question here.

18         With respect to defendants' placing plaintiff against the wall, plaintiff alleges that

19    defendants did so in response to his attempt to fall to his knees (ECF No. 1 at 4), and he has

20    admitted that defendants did not smash or press his face into the wall (ECF No. 88-10 at 103

21    (Trial transcript at 160:6-28)).  Plaintiff also does not allege any injury as a result of being placed

22    against the wall.  Taking these facts as true, defendants used only minimal force which was

23    prompted by plaintiff's resistance to the escort and caused him no harm.  The court finds no

24    excessive force under these circumstances.  See Wilkins v. Gaddy, 559 U.S. 34, 38 (2010) ("An

25    inmate who complains of a push or shove that causes no discernible injury almost certainly fails

26    to state a valid excessive force claim." (quotation marks and citation omitted)).  Since there was

27    no violation of plaintiff's Eighth Amendment rights, the qualified immunity inquiry ends, and

28    summary judgment is appropriate as to this initial use of force.  The question of whether

28

1   defendants' use of force after they turned away from the wall to continue the escort was

2   excessive, however, is not so simple.

3          Plaintiff asserts that he did not attack defendants Smith and Rossi upon turning away from

4   the wall, but rather attempted to fall to his knees and go prone, making their use of force

5   unprovoked.  Normally, the court would be required to accept this allegation as true at the

6   summary judgment stage, and, if true, defendants' use of force was a violation of clearly

7   established law that no reasonable officer could have believed was lawful.  See Felix v.

8   McCarthy, 939 F.2d 699, 702 (9th Cir. 1991) (an officers unjustified or unprovoked attack on an

9   inmate violates Eighth Amendment).  However, plaintiff's claim that the use of force was

10  unprovoked is directly contradicted by his convictions for battering defendants.[8]  Since "[t]he

11  court need not accept as true . . . allegations that contradict facts that may be judicially noticed by

12  the court," Shwarz v. United States, 234 F.3d 428, 435 (9th Cir. 2000) (citation omitted), the

13  court will consider the five factors used to determine whether force was excessive.

14         With respect to the first factor, the injury suffered by plaintiff, the court has already

15  determined that plaintiff suffered only minor injuries as a result of the use of force.  See

16  discussion supra Section VI.F.ii.c.  While "[i]njury and force . . . are only imperfectly correlated,

17  and it is the latter that ultimately counts," Wilkins, 559 U.S. at 38, the fact that plaintiff suffered

18  only minor injuries weights slightly in favor of defendants, see Hughes v. Rodriguez, 31 F.4th

19  1211, 1221 (9th Cir. 2022) ("dog bites to [plaintiff's] left leg, abrasions to his head and face, and

20  bruising on his upper right thigh" were "relatively minor" and the first factor weighed "slightly in

21  favor of the defendant law enforcement officers").

22         Next, the court considers the need for the application of force.  Plaintiff's convictions for

23  battery establish that the need for some force existed at the time defendants Smith and Rossi took

24  plaintiff to the ground, and this factor also weighs in defendants' favor.  See Shafer v. County of

25  Santa Barbara, 868 F.3d 1110, 1118 (9th Cir. 2017) (jury finding that officer had probable cause

26

27  [8]  Because Heck is not an evidentiary doctrine, it does not bar plaintiff from presenting his
    version of events.  See Simpson v. Thomas, 528 F.3d 685, 696 (9th Cir. 2008) ("Heck is not an
28  evidentiary doctrine").

1  to arrest for resisting, delaying, or obstructing an officer showed officer was entitled to "use *some*

2  degree of force").

3      The third and fourth factors—the relationship between the need for force and the amount

4  of force used, along with the threat defendants reasonably perceived—also favor defendants.  The

5  record shows that, despite being handcuffed, plaintiff struck Smith with his right shoulder then

6  twisted to elbow Rossi in his left ribcage before defendants forced plaintiff to the ground to

7  restrain him.  DSUF ¶¶ 20-21.  While the parties dispute how much body weight Smith used and

8  whether Smith put his knee on plaintiff's back—and plaintiff asserts that Smith ground plaintiff's

9  face in the gravel and told him he did not care if plaintiff died in response to plaintiff saying he

10  could not breathe—the undisputed facts show that the entire incident, from plaintiff's placement

11  on the wall to other officers taking control of plaintiff, took approximately thirty seconds.  DSUF

12  ¶¶ 24-25, 28; ECF No. 1 at 5, 7; ECF No. 90 at 3.  Given the exceptionally brief nature of the

13  application of force, it was not a disproportionate response to plaintiff's battery despite Smith's

14  inappropriate statement.  See Uerling v. Piccinini, No. 98-cv-3490 CRB (PR), 1999 WL 225981,

15  at *2-3, 1999 U.S. Dist. LEXIS 5424, at *6-8 (where plaintiff admittedly refused to leave cell and

16  fought defendants, force was not excessive even though plaintiff alleged "defendants swore at

17  him and threatened to throw him down the stairs"), aff'd, 238 F.3d 433 (9th Cir. 2000).

18      Moreover, while plaintiff asserts that he was compliant once he was on the ground (ECF

19  No. 90 at 5), rather than struggling as defendants claim, he also states that as he was being held

20  down he tensed his neck to stop Smith from grinding his face into the ground (ECF No. 1 at 5).

21  Having just been attacked by plaintiff, defendants were not unreasonable in perceiving plaintiff as

22  a threat and continuing to hold him down when he continued to tense his body, even if they were

23  ultimately wrong about the reason for plaintiff's conduct.  See Hudson, 503 U.S. at 6

24  ("[C]orrections officials must make their decisions 'in haste, under pressure, and frequently

25  without the luxury of a second chance.'" (quoting Whitley, 475 U.S. at 320)); King v. Dews, No.

26  19-cv-7722 VC, 2022 WL 1500558, at *2, 2022 U.S. Dist. LEXIS 86422, at *4-5 (N. D. Cal.

27  May 12, 2022) (even if, after being placed in four-point restraint, plaintiff was struggling to

28  breathe rather than resist, he undisputedly continued to struggle and "[i]n the midst of a chaotic

situation" and given the nature of the threat, officers were reasonable in continuing to apply force as long as plaintiff continued to struggle), aff'd sub nom. King ex rel. Raymundo v. Dews, No. 22-15743, 2023 WL 4858135 (9th Cir. 2023).  That defendants were lucky enough to not be injured by plaintiff's battery does not make their perception of plaintiff as a threat unreasonable, as they had no way of knowing in the moment whether plaintiff would continue trying to attack them.  See Whitley, 475 U.S. at 321 (the court considers "the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them").

The final factor—whether defendants made any efforts to temper the amount of force used—also weighs in defendants' favor.  The use of force was brief and resulted in only minor injuries to plaintiff, both of which indicate that the force defendants used was tempered.

Because the five factors weigh in defendants' favor, the court finds that Smith did not use excessive force against plaintiff and Rossi therefore did not fail to protect plaintiff from an application of excessive force.  However, even assuming that plaintiff's claims that Smith used all his bodyweight, placed his knee on plaintiff's back, ground plaintiff's face into the gravel, and told plaintiff he did not care if he died when plaintiff stated he could not breathe crossed the line into excessive force, defendants are entitled to qualified immunity.

Plaintiff has not identified, and the court is not aware of, any cases finding an Eighth Amendment violation on similar facts.  While it is not necessary to identify a factually comparable case where the violation is so obvious any reasonable officer would have known their conduct was unconstitutional, see Taylor v. Riojas, 592 U.S. 7, 8 (2020) (no reasonable officer could have believed conditions were constitutional given "extreme circumstances of this case"); Kisela v. Hughes, 584 U.S. 100, 105 (2018) ("general statements of the law are not inherently incapable of giving fair and clear warning to officers"), this is not such a case.  Although the law was clear at the time that an unprovoked attack on an inmate would violate the Eighth Amendment, Felix, 939 F.2d at 702, it is undisputed in this case that defendants' brief use of force was triggered by plaintiff's battery and defendants were making split-second decisions on how to best subdue an assaultive inmate.  Rather than indicating that defendants' conduct was

31

1  unconstitutional, the existing law at the time would have suggested to a reasonable officer that

2  their conduct was permissible.  See White v. Roper, 901 F.2d 1501, 1507 (9th Cir. 1990) (no

3  excessive force where plaintiff refused to enter cell causing officers to forcibly subdue him and

4  plaintiff alleged only a cut wrist and bruises); Foster v. Verkouteren, No. 08-cv-0554 CAB, 2009

5  WL 2485369, at *6-8, 2009 U.S. Dist. LEXIS 70874, at *18-23 (S.D. Cal. Aug. 12, 2009) (force

6  was not excessive where plaintiff admitted to resisting being handcuffed and defendant struck

7  plaintiff in chin with his fist causing only minor injury), aff'd, 405 F. App'x 102 (9th Cir. 2010)

8                                          c.   Deliberate Indifference

9          With respect to plaintiff's claims that defendants were deliberately indifferent to his

10  medical and mental health needs, the facts taken in the light most favorable to plaintiff do not

11  show the violation of a constitutional right.  Accordingly, it is not necessary for the court to

12  address defendants' arguments that they are entitled to qualified immunity as to those claims and

13  the court declines to do so.

14          G.   Conclusion

15          For the reasons set forth above, defendants' motion for summary judgment should be

16  granted on the grounds that defendants Smith, Rossi, and Harwood were not deliberately

17  indifferent to plaintiff's mental health and medical needs.  Summary judgment should also be

18  granted for Smith on the ground that he did not use excessive force against plaintiff.  Because

19  Smith did not use excessive force, summary judgment is also appropriate on the claim against

20  Rossi for failure to protect.  Alternatively, Smith and Rossi are entitled to qualified immunity on

21  the excessive force and failure to protect claims.

22          VII.   Plain Language Summary of this Order for a Pro Se Litigant

23          Your motion to compel is being denied.  It is also being recommended that defendants'

24  motion for summary judgment be granted on the grounds that the undisputed evidence shows that

25  defendants Smith, Rossi, and Harwood were not deliberately indifferent to your mental health or

26  medical needs and Smith and Rossi did not use excessive force or fail to protect you.  Smith and

27  Rossi are also entitled to qualified immunity on the excessive force and failure to protect claims.

28  ////

CONCLUSION

Accordingly, IT IS HEREBY ORDERED that:

1.  Plaintiff's motion to compel (ECF No. 80) is DENIED;

2.  Plaintiff's motion to strike (ECF No. 83) is DENIED;

3.  Plaintiff's motion for copies (ECF No. 84) is DENIED as moot; and

4.  Defendants' request for judicial notice (ECF No. 88-10) is GRANTED.

IT IS FURTHER RECOMMENDED that defendants' motion for summary judgment (ECF No. 88) be GRANTED for the reasons set forth above.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: June 18, 2024

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE